FLORIDA EAST COAST RAILWAY, A CORPORATION, PLAINTIFF IN ERROR, v. ERSULA J. WADE, AND ALBERT J. WADE, HER HUSBAND, DEFENDANTS IN ERROR.

1. When the negligence of an employee of a railroad company is a proximate cause of injury to a passenger, the company is liable in damages for such injury sustained by the passenger as should have been foreseen as the probable proximate result of the negligence.

2. In order to recover damages in an action against a railroad company for injuries to a passenger because of the negligence of an employee of the company, there must have been injury sustained by the passenger; there must have been negligence of the employee; such negligence must have been a proximate cause of the injury; there must have been no independent efficient cause intervening between the negligence of the employee and the injury to the passenger; the injury sustained must be such as should have been contemplated as a probable proximate result of the negligence.

3. A proximate cause is one that directly causes, or contributes directly to causing the result, without any independent efficient cause intervening between the cause and the result or injury. The particular injury sustained need

not have been in fact contemplated; but the injury sustained must be such as should have been contemplated as a natural and probable proximate result or consequence of the cause or negligence.

4. Where a conductor of a railroad train tells a passenger in response to an inquiry that her destination will be reached in twenty minutes, that it is the next stop; and when the train next stops before reaching her destination the passenger leaves the train from the rear without the knowledge of any of the trainmen, without being told her destination had been reached, and without making inquiry, when she was not sure the twenty minutes had elapsed, when she stepped off the train at two o'clock in the morning into water at a place where no station or lights were in sight, and when the passenger is held to know that she had a right to be informed of the arrival of the train at her destination, and to have a reasonable time to alight at a reasonably safe and suitable place, the information given to the passenger by the conductor, even if done negligently, cannot be said to be a proximate cause of injury by sickness to the passenger as the result of the fright she experienced because of getting off the train at the wrong place where the surroundings excited her fear. The act of the passenger in leaving the train under the circumstances stated and her fright and subsequent illness could not reasonably have been contemplated as a natural, direct and proximate result of the information given to the passenger by the conductor in response to an inquiry from her.

5. A judgment for damages against a railroad company for injury to a passenger because of the negligence of an employee of the company is contrary to law and will be reversed when the evidence shows that such negligence was not a natural and probable proximate cause of the injury sustained, and that such injury should not reasonably have been contemplated.

This case was decided by Division A.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*D. U. Fletcher* and *R. P. Marks,* for Plaintiff in Error;

*Jno. W. Dodge,* for Defendants in Error.

WHITFIELD, J.: This writ of error was taken to a judgment rendered by the circuit court of Duval county in favor of the defendants in error against the plaintiff in error.

The declaration alleges a contract between Ersula J. Wade and the Florida East Coast Railway Company for carriage of the former as a passenger by the latter from St. Augustine to Gifford, Florida; "that when plaintiff became a passenger as aforesaid to be carried to Gifford, Florida, it became and was the duty of the defendant to advise and direct the plaintiff as to the proper time and place and manner of alighting from said train; that plaintiff being a stranger on said road and having never traveled thereon, asked the conductor of said train several times en route 'how far it was to Gifford;' that the conductor told plaintiff that he would get her check for her baggage just before the train arrived at Gifford; that said conductor went into the car where plaintiff was and at his request she delivered to him the check for her baggage, at which time she asked said conductor how long it would be before they would get to Gifford, whereupon he, the con-

ductor, replied 'about twenty minutes,' 'in fact the next stop,' and there being no porter or other trainman present to announce the name of any stopping place for defendant's train, and plaintiff relying in good faith upon what said conductor had told her, and believing that the next stop of said train was the place of her destination, as she had been told by said conductor, plaintiff disembarked therefrom when the said train next stopped in obedience to the directions given her by said conductor;" that she got off at "Wabasso" about two o'clock in the morning on a very dark and damp night entirely alone, and there were no accommodations at all at said station; that because of the conditions and surroundings at Wabasso she "became badly frightened" and "suffered great mental pain and anguish and became greatly frightened and alarmed, and by reason of the premises and such gross carelessness of the defendant the plaintiff suffered great bodily pain, became and was sick and disordered and confined to her bed in sickness for a period of about five months, suffering great pain and agony," &c. Plaintiff Ersula J. Wade claims damages in $19,633.00. That plaintiff Albert James Wade was and is the husband of Ersula J. Wade, that by reason of the premises he has suffered great loss and damage in procuring medical assistance, medical supplies, nurse, &c., for his said wife, making a total of actual expenses of $367.00.

A motion to strike portions of the declaration, and a demurrer to the declaration were overruled. The defendant filed pleas (1) not guilty, (2) denying that plaintiff in obedience to the directions, solicitations and invitation of defendant's conductor left the train at "Wabasso," (3) that plaintiff left the train at Wabasso without the direction,

knowledge or consent of defendant's conductor, (4) the injury suffered by plaintiff was caused by her own negligence.

The plaintiff, Ersula J. Wade, testified that on December 31st, 1903, she was a passenger on defendant's train from St. Augustine to Gifford, Florida; "after purchasing the ticket I got aboard the Florida East Coast train en route for Gifford. And, after we got down a little distance, I was a little uneasy, because I saw I was going to reach my destination very late. After reaching a town called, I think, Titusville, the class of colored people that got on was very rough. That section of the country seemed altogether different from any that I had ever traveled over, and I felt uneasy and worried. In fact it was that season of the year when the rougher element of our people do travel a good deal of the time, and they were mainly men—some of them using bad language and drinking from open flasks, which I am not accustomed to, and I felt frightened and a little uneasy. And when the conductor would come in the coach at different times I asked him how long it would be before we would reach Gifford, and he told me one time: 'When we get very nearly there, I will come and get your check.' Then, as we got on down further, he came in there and asked me for my check. I handed him the check and again asked him how long it would be before we would reach Gifford. He said: 'in about twenty minutes,' that it was 'the next stop.'

In what seemed to me to have been, possibly, that length of time, the train made a stop, and I got my packages together and alighted from the train. It was quite a long coach, and when I alighted I couldn't see anything at all. I didn't see any station or any lights." "I suppose

it had been fifteen or twenty minutes" from the time the conductor took the check until the train stopped where plaintiff got off. No one connected with the train was present when she got off, or immediately thereafter. "It was between two and three o'clock, and as I got off the train I stepped down in a puddle of water." She got off at Wabasso and became frightened because of the situation in which she was placed, and to protect herself got into an empty freight car she found near by on the track "and stayed there until dawn." "I was pregnant at the time. Between two and three months. Before I got off the train I was in perfect health, I felt no uneasiness, except that I felt nervous from the things that were told me about that section of the country." "I took the train from Wabasso that evening and went on down to Gifford and when I arrived at Gifford I immediately went to bed. I felt completely upset—had pains in my abdomen and I felt threatened with an abortion. I felt that it might happen." She remained in Gifford some days and returned to home in Westside, Miss., via Atlanta, Ga., and Vicksburg, Miss. She reached home January 9th, 1904, "in an exceedingly nervous condition—suffering from nervous attacks—palpitation of the heart and threatened abortion." "But these nervous attacks were not controlled, and, at the end of the period, between the 25th and 30th of January, I aborted, and was ill then for three weeks," &c. "It was not until the latter part of May that I was enabled to go out."

The conductor testified that on "leaving Sebastian, about ten miles this side of Gifford, her destination, I asked her for her trunk check—Gifford being a flag stop, where

passengers have baggage, we left the check, so as to put the baggage off, otherwise we carry it through to the first agency station. She asked me how long it would be before we'd be there. I told her about twenty minutes." The plaintiff was in "the combination car on the rear end" of the train. The trainman is "always on the forward end, unless we have passengers; then he swings off and goes to the rear end to look for the colored passengers to get off." The only passenger for Wabasso "got off the forward end of the passenger coach." "I positively did not" tell the plaintiff that Gifford was the next stop. "The station Quay is between Wabasso and Gifford also."

It is contended that the verdict and judgment are contrary to law.

When the negligence of an employee of a railroad company is a proximate cause of injury to a passenger, the company is liable in damages for such injury sustained by the passenger as should have been foreseen as the probable proximate result of the negligence.

There must have been injury sustained by the passenger; there must have been negligence of the employe, such negligence must have been a proximate cause of the injury; there must have been no independent efficient cause intervening between the negligence of the employee and the injury to the passenger; the injury sustained must be such as should have been contemplated as a probable proximate result of the negligence. A proximate cause is one that directly causes, or contributes directly to causing the result, without any independent efficient cause intervening between the cause and the result or injury. The particular injury sustained need not have been in fact contemplated, but the injury sustained must be such as should

have been contemplated as a natural and probable proximate result or consequence of the cause or negligence. Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g. Co. 27 Fla. 1, 157, 9 South. Rep. 661, 17 L. R. A. 33; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469; Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Western Union Tel. Co. v. Milton, decided at this term; 6 Current Law 757; Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South Rep. 558; Savannah F. & W. Ry. Co. v. Cozens, 46 Fla. 237, 37 South. Rep. 398; Seaboard Air Line Ry. Co. v. Barwick, 51 Fla. 304, 41 South Rep. 70; Moore on Carriers, 377, Sec. 2.

The only act of the conductor claimed to have been negligent was his telling the plaintiff that Gifford would be reached in twenty minutes—that it was the next stop. Did this justify the plaintiff in leaving the car from the rear when the train next stopped in the dark with no houses or lights in sight where there was no one to advise or to assist her, without being told to do so by any one? The contract of the defendant was to carry the plaintiff to Gifford; and it was the duty of the company to notify her when to get off at Gifford. She had a right to rely upon the proper performance of this duty by the company; and she was not required to alight from the car before being advised that her destination had been reached. Even if the conductor had informed her that the next stop would be Gifford she could and should have waited to be informed of the arrival of the train at that place. It is true she had a right to leave the car before reaching her destination and in the absence of fault on its part the company could not be held liable for injuries resulting from her voluntarily so leaving the car. It ap-

pears from the testimony that Gifford was in fact two sta-
tions beyond and that it and the intermediate station
were flag stops.

Even if the conductor told the plaintiff that Gifford was
the next stop, he also told her that it would be twenty
minutes before reaching there. This did not justify the
plaintiff in leaving the train from the rear where no train-
men were when it next stopped without making inquiry,
when she was not sure twenty minutes had elapsed, when
she had not been advised that her destination had been
reached, and at a place where she had to step into water
in getting off with no station or light in sight. If the
conductor had negligently told the plaintiff that Gifford
was the next stop when in fact it was not, he qualified it
by stating the time required to reach Gifford, and it can-
not be said that he should have contemplated that as a
result of the information he gave plaintiff she probably
would voluntarily get off the train the next time it stopped
without the knowledge of the trainmen and regardless of
the conditions or surroundings at a place when no station
or light was in sight when she was not told her destination
had been reached, when she was not even sure the twenty
minutes had elapsed, and without making inquiry, when
she had a right to be told of the arrival of the train at her
destination and to be given a resonable opportunity to
alight in a reasonably suitable place.

Suppose on account of an accident the train had from
necessity stopped for a brief period in some dangerous
place before reaching Gifford, would the defendant be lia-
ble for injury to the plaintiff resulting from leaving the
train during such a stop without the knowledge or con-
sent of the company's servant?

The plaintiff testifies that she stepped off in water and saw no lights or station. This was enough to put her upon inquiry; notwithstanding that, she left the car from the rear without giving notice to anyone. She also testified that she supposed fifteen or twenty minutes had elapsed from the time the conductor told her that Gifford would be reached in twenty minutes, when the train stopped and she got off. She guessed at the time, was not sure the twenty minutes had elapsed and got off in the dark from the rear of the car, where no one was in sight and no lights or station to be seen, without being told the place was Gifford. This indicates at least carelessness on her part and a lack of ordinary precaution for self preservation.

Even the plaintiff was doubtful if the time stated by the conductor had expired, therefore it is not certain that the information she received from him controlled her action.

She testified that the people of her race with whom she was riding were offensive to her in their deportment and that she was nervous because of this and of reports she had heard. This may have hastened her departure from the train and made her neglect her own duty to herself; but the defendant company is in no way responsible for the deportment of members of her race as she saw it and heard of it.

If she was in doubt as to expiration of the time stated to her by the conductor she should have made inquiry before voluntarily leaving the car from the rear when no one saw her and stepping off in the water with no lights or station in sight.

The conductor denies that he told the plaintiff that

Gifford was the next stop and states he told her Gifford would be reached in twenty minutes.

Taking the testimony of the plaintiff as true it does not appear that the information given to her by the conductor was the proximate cause of her illness. She left the car voluntarily without the conductor's knowledge or consent. Even if leaving the car was the proximate cause of her illness, such leaving was not because of the negligence of the conductor, but solely because of her own negligence in guessing at the passage of time, in leaving the car from the rear when no one saw her without being told Gifford had been reached and in stepping off into the water at the wrong place when it was dark and no light or station was in sight. If the conductor should not have contemplated the passenger would leave the car from the rear under the circumstances stated, the mere absence of trainmen from the rear of the car when the passenger alighted is not negligence on the part of the railroad company.

Even if the conductor was negligent in giving the plaintiff the information it cannot be said he should have contemplated as the probable and proximate result of such negligence that the plaintiff would guess at the passing of time, would make no inquiry, would leave the car from the rear when no one saw her, without being told that her destination had been reached, and step off into water at a flag station when it was dark and no station or lights in sight, when she is held to know that she had a right to be informed of the arrival of the train at her destination and to have a reasonable time to alight at a reasonably safe and suitable place.

Assuming it to be the duty of the railroad company to announce to the passengers generally the arrival of a

train at stations were passengers alight, this would impose upon the passengers some duty to await the announcement of the arrival of the train at a station before alighting, especially where the stations are not known to the passengers. In this case the passenger testified that she was not familiar with the stations on the road. There was no announcement that her destination had been reached. Ordinary prudence would have prompted her to at least make some inquiry before alighting under the circumstances disclosed by this record.

Under the circumstances shown by this record the verdict and judgment cannot be sustained, since it does not appear that the injury complained of was the natural and probable proximate result of any negligence of the defendant's employee. This conclusion renders it unnecessary to discuss the other assignments of error.

The judgment is reversed and a new trial is awarded.

SHACKLEFORD, C. J., and TAYLOR and PARKHILL, JJ., concur;

COCKRELL and HOCKER, JJ., dissent.