SEABOARD AIR LINE RAILWAY COMPANY, a Corporation; ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation and J. D. MURRAY, *Plaintiffs in Error,* vs. LENA B. EBERT, a widow, *Defendant in Error.*

138 So. 4.

En Banc.

Opinion filed July 30, 1931.

Petition of Defendant in Error for rehearing granted September 15, 1931.

Judgment affirmed October 13, 1931.

Petition for Plaintiffs in Error for rehearing denied November 18, 1931.

*W. B. Crawford, W. B. Parks* and *Dickinson & Dickinson,* for Plaintiffs in Error;

*Pleus, Williams and Pleus* and *George P. Garrett,* for Defendant in Error.

ELLIS, J.—Orange Avenue, a street in the City of Orlando and one of the main thoroughfares of the city, fol-

lows a course due north through the center of the city to the north side where the street curves in a northeasterly direction and becomes a highway to the city of Winter Park. Highland Avenue is a street in the City which parallels Orange Avenue on the east until it intersects or merges into Orange Avenue at a point some several hundred feet from where the latter curves northeast toward Winter Park.

The Atlantic Coast Line Railroad Company has a main line and two side tracks laid across Highland Avenue at a point some 135 feet south of the point where Highland Avenue flows into Orange Avenue or Winter Park Highway. Those tracks at that point follow a northeasterly and southwesterly course. At a point some seventy-five feet south of those tracks the main line of the Seaboard Air Line Railroad crosses Highland Avenue; that track also follows a northeasterly and southwesterly course. These crossings, just at the entrance practically of the City of Orlando, render traveling upon Highland Avenue dangerous. Signal lights are established in the center of the highway; one north of the Atlantic Coast Line tracks and one south of the Seaboard Air Line track about eight or ten feet approximately from the tracks and about 180 feet apart.

These signal lights are the usual three light signal device. The top or red light warns travelers on the public highway to stop; the center light, usually yellow in color, warns of possible danger and admonishes caution; the bottom light is green and signifies freedom from danger to persons desiring to proceed on their journey across the intersection of the two highways. The lights used at these railroad crossings serve much the same purpose as ordinary traffic lights used by city authorities to regulate traffic. The red light, which is at the top, has the word "stop" lettered across the disk; the center light the word "caution", and the third or bottom light, which

is green the word "go". The lights shift from "red" to the center or caution light and thence to green. From the latter, or danger free signal the lights shift to caution or yellow and then to red. In addition to these signals a bell is rung when the middle or center light is on.

The lights are operated from a tower by a person who uses a mechanical device to give the appropriate signals to persons traveling on the public highway. That person, so it is alleged, was employed by the two railroad companies jointly and in the discharge of his duties as tender of the lights acted for the two railroad companies and at the time of the accident which gave rise to this action the employee was J. D. Murray.

On the 24th day of February, 1929, which was Sunday, Mrs. Lena B. Ebert, her husband Frank M. Ebert and her sister Mrs. Beck, at about two o'clock in the afternoon started for an automobile trip to Winter Park. The style and make of the automobile was an Oldsmobile Landau, six cylinders. Mrs. Ebert was driving, her husband on the front seat next to her and Mrs. Beck was on the rear seat. They drove north on Highland Avenue and as they approached the track of the Seaboard Air Line Railroad Mrs. Ebert observed another automobile which had stopped south of the track on the east side of the highway. She noticed that the north signal light was *red*. The north signal light would be the one north of the Atlantic Coast Line tracks and about 180 feet from the south signal light which was the one nearer to Mrs. Ebert as she approached the Seaboard Air Line track from the south that light also showed red as Mrs. Ebert approached the automobile in front of her which had stopped a little to one side of the south light and did not obscure the light from her.

Mrs. Ebert was then approaching slowly the automobile in front when she saw the Atlantic Coast Line passenger train cross the highway going north. She

said that "as soon as the passenger train went north the light signal light flashed green". At that time she was "three or four car lengths behind the stopped car" and she saw the automobile in front of her cross the railroad track and she proceeded to follow. As the front wheels of her automobile reached the Seaboard tracks she observed the north light flash red. Her first impulse was to "back off the track" and tried to do so. A Seaboard Air Line freight train was approaching the crossing. The train consisted of fourteen refrigerator cars behind the engine and two loaded cars and the caboose on the front. The train was backing. From the end of the last car to the engine the train was about six hundred feet long. It was approaching the crossing from the south at about six and a half miles per hour. Mrs. Ebert's automobile was struck by that train of the Seaboard Air Line Railway Company and Mr. Ebert sustained injuries from which he died at about 8 or 9 o'clock P. M. at the sanitarium to which he had been taken.

Mrs. Ebert was well informed of the location, the permanently attached physical objects such as the railroad tracks, signal lights, buildings and towers and had been operating an automobile about three years. When her automobile came upon the railroad track and she saw the red in the north signal light and realized the peril she was in and tried to back her automobile off the track, realizing her imminent danger from the approaching train she "lost consciousness or something, probably from fright or otherwise" she did not know.

In April of 1929 Mrs. Ebert brought an action for damages against the two railroad companies and J. D. Murray for the wrongful death of her husband. There was a verdict and judgment in her favor in the sum of fifteen thousand dollars and the three defendants took a writ of error.

The declaration, consisting of one very long count,

rests upon the alleged act of Murray in causing the *red* or *stop* light in the signal light towers to cease burning and the *green* or *danger free* lights to burn in the signal towers when the freight train of the Seaboard Air Line Railway Company was approaching within a short distance of the crossing. That act of Murray was alleged to have been careless and negligent and done as the agent, servant and employee of both the Railroad Companies. The Atlantic Coast Line Company demurred to the declaration, moved for a compulsory amendment and moved to strike that Company from the case as a party defendant. These motions and the demurrer were overruled.

The declaration stated without ambiguity a good cause of action against the Seaboard Air Line Railway Company and Murray. The defendant Murray was alleged to be the joint agent of the two Railroad Companies and that while in the discharge of the duties devolving upon him as such employee he negligently and carelessly produced or gave a signal of false security of freedom from danger to persons traveling on the public highway and particularly to the plaintiff who was about to cross the railroad tracks of the Seaboard Air Line Company.

An agent who commits such an act is as much tort feasor as his principal. 1 Mechem on Agency, p. 1081.

Jurisprudence does not concern itself with such attenuated verbal distinctions in matters where injury results from a servant's doing what he should not do and failing to do that which he ought to do. See Mayer v. Thompson-Hutchinson Bldg. Co., 104 Ala. 611, 16 South. Rep. 620; 28 L. R. A. 433; Baird vs. Shipman, 132 Ill. 16, 23 N. E. Rep. 384, 7 L. R. A. 128.

Aside from any consideration of contributory negligence on plaintiff's part, which does not appear in the declaration, there is a very palpable ''causative con-

nection'' between the act of the defendants in giving to the plaintiffs a false signal of security and freedom from the danger of an approaching train then imminently near the crossing and the injury sustained by Mr. Ebert, an occupant of the automobile driven by the plaintiff who was then in the act of preparing to cross the track with the automobile. Such a negligent or careless act of the defendants under such circumstances would naturally lead to or produce similar results to that described in the declaration. See Fla. E. C. Ry. Co. v. Wade, 53 Fla. 620, 43 South. Rep. 875; Williams v. A. C. L. R. Co., 56 Fla. 735, 48 South. Rep. 209, 24 L. R. A. (N. S.) 134 n; Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462.

The declaration alleged that the crossing is in the City of Orlando and the two railroad companies whose railroad tracks crossed Highland Avenue together had provided and were maintaining the signal service at that point. The fact remains however that it was on the track of the Seaboard Company where the injury occurred and by a Seaboard Company's train of cars. The act causing the injury was the act solely of the Seaboard Air Line Company with which the Atlantic Coast Line Railroad Company had nothing to do unless indeed the negligent act of the Seaboard's agent Murray, which may have made the Seaboard Company liable became also the negligent act of the Atlantic Coast Line Company because Murray was also the latter's agent.

The railroad companies were separate entities, their several interests and activities in no wise merged. They maintained however jointly one signal light service and employed jointly one man Murray to operate it. It nevertheless might be argued that the negligent act of Murray could in reason be charged to the Company which actually committed the injury; that it is sufficient that the Company only should take the hazard of Murray's negligent act which actually committed the injury

through his carelessness. While the maintenance of the guard or lights at the crossing was a joint undertaking it was nevertheless independent and several in so far as it related to each railroad Company's duty to the public.

The case of Hales v. Michigan Central Railroad Company, 200 Fed. Rep. 533, presents a state of facts in many respects like the facts in this case. The Lake Shore & Michigan Southern Railroad and the Michigan Central Railroad were two separate corporations, each had tracks crossing a street in Lucas County. The two tracks were within seventy feet of each other and the two companies employed one man to operate the guards at the crossings. A street car in attempting to cross was struck by a passing train of the Michigan Central. The guard gates and gong were out of repair and the agent was absent. The action was brought against the Railroad Company whose train of cars struck the street car.

The question might very well arise: whose servant was Murray when the plaintiff approached the Seaboard track? "The maxim of respondeat superior is bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it". For the above quotation see Hall v. Smith, 2 Bing. 156.

It was the Seaboard Railroad in this case which expected to derive advantage from the performance efficiently of the agent Murray because it was the Seaboard's train which was approaching. However while the overruling of the demurrer is made the basis of the fiftieth assignment of error, that assignment is not argued and pursuant to an invariable rule of this Court it will be considered as abandoned.

The two railway corporations defendants and J. D. Murray filed pleas presenting the same issues. Murray pleaded not guilty; that he was not the agent of the

Seaboard Air Line Railway; that plaintiff's deceased Frank Ebert was guilty of contributory negligence in that he negligently got out of the automobile and stepped on the track of the Seaboard Railway directly in front of the approaching cars, and that the plaintiff in driving the automobile did not act with caution but undertook to cross the railroad track without looking for approaching cars which were at that time in plain view of the plaintiff for at least one hundred and fifty yards and that by looking she could have seen them and avoided the injury. The pleas of the Seaboard Railway were the same as those tendered by Murray. The Atlantic Coast Line Railroad pleaded that Murray was not its agent. In other respects the same issues were tendered by its pleas. Issue was joined and verdict rendered and judgment entered as stated.

There are fifty-three assignments of error, some of which have been abandoned. The first, second, third, fourth, fifth and fifty-third assignments present the propositions that the verdict is not supported by the evidence, is contrary to the law and charges of the court, is excessive and that the judgment does not follow the verdict in that the latter is a joint verdict while the judgment is joint and several.

It is true that the language employed in the judgment is that the plaintiff do have and recover from the defendants, naming them, "jointly and severally" the amount stated. The question is, does that variance invalidate the judgment, and if so may not the error be corrected by remanding the cause with instructions to amend the judgment to conform to the verdict?

The cause of action as presented in the declaration is joint as against the three defendants. The evidence in so far as it may be considered as sustaining the case as made by the declaration tends to show joint liability. While it is true that where there are several tort feasors

an action may be brought against each severally, they may all be united in an action on their joint liability. See Cooley on Torts, 3rd Ed. p. 224.

It is a recognized rule that a judgment must conform to the cause of action as disclosed by the pleadings; that the judgment must follow the verdict; that a judgment should not be entered against one only of two defendants jointly sued and against whom a joint verdict was rendered. See Trustees Int. Imp. Fund v. Jacksonville, Pensacola and Mobile R. R. Co., 16 Fla. 708; Baker & Holmes Co. v. Indian River State Bank, 61 Fla. 106, 55 South. Rep. 836; Paul v. Commercial Bank of Ocala, 66 Fla. 83, 63 South. Rep. 265; Hancock v. State Exchange Bank, 70 Fla. 243, 70 South. Rep. 211; Potter v. Realty Securities Co., 77 Fla. 768, 82 South. Rep. 298; 33 C. J. 1124-1127.

When an improper judgment is entered upon a proper verdict the appellate court will reverse the judgment with directions for entry of a proper one. Geiger v. Henry, 44 Fla. 208, 32 South. Rep. 874.

The rule however it has been held does not apply in cases of tort because as it has been said: "there is no contribution between tort feasors". In a tort action one may take a judgment against a portion of the defendants in which case the judgment amounts to a dismissal as to the residue. See 26 R. C. L. 780; McNeely v. Los Angeles County Sup. Ct., 36 Cal. App. 602, 173 Pac. Rep. 102.

But in this case a joint verdict was rendered against the three defendants therefore the judgment should be joint: Eames v. Stevens, 26 N. H. 117; Pickle v. Byers, 16 Ind. 383; Ft. Worth & N. O. Ry. Co. v. Enos, 15 Tex. Civ. App. 673, 39 S. W. Rep. 1095; Perine v. Deans & Shoultz, Tappan (Ohio, 1818) 236; Fields v. Williams, 91 Ala. 502, 8 South. Rep. 808; 11 Enc. Pl. & Prac. 856.

Is the judgment any the less joint because it adds the words "jointly and severally"? The judgment is against

the three defendants sued jointly on a joint and several liability and judgment against them jointly was rendered. One payment of the judgment will satisfy it. The plaintiff could not require each defendant to pay it and there is no ascertainment in the judgment of liability against the defendants severally in different amounts. Execution may be levied upon the property of either defendant and it may be sold to satisfy the judgment against all. The words jointly and severally are mere redundant words signifying nothing more than if they had not been used as the judgment was against all three defendants.

On the question of the sufficiency of the evidence much can be said and has been said by counsel in their able briefs. In the first place we are unable to approve in its entirety the suggestion of counsel for the defendant in error, so far as we gather that suggestion from the closing words of their brief. Stripped of its rhetoric and words of embellishment, the suggestion seems to be that a traveller upon the public highway, who is preparing to cross a railroad track which crosses the highway and at which point the company has placed a flagman or signal light to warn travelers of the danger of approaching trains or to assure them of a clear way and freedom from danger, may rely implicitly upon such signals as may be given him at the crossing and proceed on his way if the signal given is an invitation to proceed, even though by the exercise of the same sense of hearing or sight he may be aware of the approach of a train of cars and dangerously near the crossing; that he may ignore the fact made apparent to him by actually seeing the approaching train and hearing the noise of its approach and drive with impunity upon the track in front of the cars moving down upon him, so far at least as the law casts the duty upon him of avoiding danger if reasonably possible, although he knows that the result of a collision between his vehicle or himself and the train of cars

means severe and serious injury, if not annihilation to himself.

Such a doctrine would relieve the traveler on the public highway of the duty of exercising ordinary care in crossing the track if the signal has been favorable to his progress across it. The cases cited sustain no such doctrine. The doctrine held by the courts of Alabama and other courts whose decisions are cited, is that the traveler must exercise ordinary care not to expose himself to danger, and whether he was in the exercise of ordinary care in not *looking* for *danger* is a question of fact for the jury. A. C. L. R. Co. v. Ballard, 202 Ala. 354, 80 South. Rep. 436; Love v. Ft. Dodge D. M. & S. R. Co., .... Iowa ...., 224 N. W. Rep. 815; Smith v. Erie R. Co., Inc., .... N. J. L. ...., 144 Atl. Rep. 166; Deheave v. Hines, 217 Ill. App. 427; Pittsburg C. C. & St. L. R. Co. v. Tatman, 72 Ind. App. 519; 122 N. E. Rep. 357; Gerg v. Penn. R. Co., 254 Pa. 316, 98 Atl. Rep. 950; Leonard v. N. Y. C. Ry. Co., 42 N. Y. S. C. 225.

The rule that one traveling in an automobile desiring to cross a railroad track which lies across the highway has a right to assume that the flagman will know whether it is safe to cross and will warn him if it is not is undisputed, but the rule is subject to the qualification that the traveler should not leave undone any reasonable thing that the law requires that he should do for his own safety; that a person fails so to do, relying solely upon the signals given by the flagman, goes to the question of contributory negligence and in this State affects the amount of damages recoverable.

The reciprocal duties of Railroad Corporations whose tracks cross public highways and streets of cities and towns at a level grade have often been considered by this court, discussed and clearly defined in so many cases it would seem that they might be recognized as a settled doctrine in this State.

The rule announced in the case of S. A. L. Ry. Co. v. Myrick, 91 Fla. 918, 109 South. Rep. 193, is as follows:

"It is as much the duty of a person travelling upon the public highway, who is about to cross a railroad track, to use ordinary care and prudence to ascertain if a train is approaching upon the railroad track as it is the duty of the railroad company to cause warnings, by appropriate signals, to be given of an approaching train operated by it to all persons who may be upon the public highway."

In the case of S. A. L. Ry. Co. vs. Smith, 53 Fla. 375, 43 South. Rep. 235, Mr. Justice Hocker, speaking for the court, said:

"It must not be forgotten that a railroad company has not only a right to operate its trains, but it is its duty to operate them, and, while it should always observe reasonable precautions to prevent injury, it is not to be required to observe unreasonable ones. That the duty of a railroad company in operating its trains is always conditioned by the exigencies of any particular situation, and to be ascertained from them, and this is true, independent of the statutory provisions".

In the case of A. C. L. R. Co. v. Weig, 63 Fla. 69, 58 South Rep. 641, Ann. Cas. 1914 A 126, Mr. Justice Whitfield, speaking for the Court said:

"The drivers of vehicles on public highways are required by law to exercise due care and to have the vehicles in control on approaching a railroad grade crossing and to use reasonable ordinary care to *discover* approaching trains." (Italics mine).

The learned Justice in that case said:

"A failure of either party in the exercise of *due* care under the circumstances as they *may* appear, is negligence, and the consequences of negligence are governed by applicable provisions and principles of law." (Italics mine).

The phrases "due care" and "reasonable ordinary care" as applied to persons who approach a railroad crossing are not susceptible of any hard and fast definition but must be interpreted with reference to the duty of one

traveling on the public highway to avoid injury to himself by trains that may be approaching as well as the circumstances of the situation at the time. The vigilance required of one who wishes to cross a railroad track while traveling on the public highway is measured by the circumstances or conditions existing at the crossing at the time. See A. C. L. R. Co. vs. Watkins, 97 Fla. 350, 121 South. Rep. 95; Egley v. S. A. L. Ry. Co., 84 Fla. 149, 93 South. Rep. 170.

The language of the Court in that case is interesting as illustrative of the duty resting upon one who undertakes to cross a railroad track at the point stated. If one in possession of his sense of sight could see an approaching train at a great distance in time to stop his automobile until the train passed and does not stop is guilty of such negligence as precludes his recovery of damages in case of injury, it would seem to follow that if such an one could see the train, by the use of reasonable caution, only a short distance away the duty to stop until the train passes is greatly increased. See S. A. L. Ry. Co. v. Tomberlin, 70 Fla. 435, 70 South. Rep. 437.

In the case of Germak v. F. E. C. Ry. Co., 95 Fla. 991, 117 South. Rep. 391, it was stated that:

"The rule announced by the Supreme Court of the United States which in effect is that, before a person goes upon a railroad track, he must look in the proper directions for a possible approaching train, and, if the circumstances reasonably require it, he must stop and exercise his faculties to determine whether it is safe to cross the track under the circumstances of the occasion, is a standard of care appropriate in crossing railroad tracks; and the rule does not relate to the duty of railroad companies or define the liability of such companies."

It was also stated that if both the injured person and the employees of the railroad company were at fault in causing the injury there may be a recovery but the dam-

ages will be reduced in proportion to the contributory negligence of the injured party.

In the case of F. E. C. Ry. Co. v. Davis, 96 Fla. 171, 117 South. Rep. 842, this Court said:

"In this case the plaintiffs could have seen the oncoming train if they had been observant of ordinary care in going into an obvious position of danger."

The evidence in this case as shown by the maps of the location of the accident and illustrated in the accompanying diagram reveals an open unobstructed triangular space to the left of the plaintiff, as she approached the Seaboard Air Line crossing seventy-four feet away, some 5032 square feet in area. The triangular area formed by a line drawn along the north side of the brick building to the left projected on the left to the center of the railroad track and on the right to the center of the public highway upon which the plaintiff was traveling in her automobile one hundred and thirty-six feet and two inches long, a line from the center of the highway north to the center of the railroad track seventy-four feet and from that point in the center of the railroad track southwesterly along the center of the track to a point where the first line intersects the railroad track one hundred and fifty-seven feet. Now let that line represent the hypotenuse of the triangle and assume, as the plaintiff testified, that she was driving her automobile very slowly along the highway at that point. She could have by the use of ordinary precaution when she was seventy-four feet from the center of the railroad track seen the train of cars approaching the crossing one hundred and fifty-seven feet away and every foot of that distance from the point at which she would cross because there were no obstructions to her view.

AVENUE

AVENUE

FILLING STA.

PHOTOGRAPHS NO. 5
TAKEN HERE

SIGNAL LIGHT

ICE PLANT

IC PLANT

ICE CHUTE

SIGN

CROSSING SIGN POST

OLD ICE PLANT

A.C.L. SIDING

A.C.L. MAIN LINE

A.C.L. MAIN LINE

S.A.L. RY. MAIN LINE

SIGNAL LIGHT

METER BLDG

OLD BOILER

OLD BOILER

BRICK BUILDING

GALV. IRON BUILDING

OLD PUMPING STATION

PHOTOGRAPHS NO
TAKEN HERE

PLATFORM

FRAME SHOP

FRAME DWELLING

BRICK PAVEMENT

The Seaboard train of box cars was moving northward approaching from the left. The plaintiff had been warned by a red light north of the Atlantic Coast Line tracks and both lights operated simultaneously. She saw the Atlantic Coast Line train pass going north, then she saw the automobile ahead which had stopped move across the Seaboard track. Assuming that she saw the south light flash "green", the invitation to cross, was she absolved from the duty of observing the slowly approaching train of box cars of the Seaboard Air Line? Seeing them as she could have seen them approaching by the use of ordinary precaution, may she be said to be wholly without negligence contributing to the death of her husband if disregarding her duty to observe the approaching train and stop her slowly moving automobile to avoid danger she relied entirely upon the invitation of the "green" light to cross and concentrated her attention upon following the automobile ahead?

The plaintiff's automobile was under control, it was moving slowly toward the railroad track. At the rate of speed it was traveling it could have been brought to a full stop almost instantly, at least within a few feet, at any point along the base of the triangle when by the reasonably prudent or careful use of her sense of sight the approaching train of box cars was in full unobstructed view fully one hundred and fifty-seven feet from the crossing.

Under the rule announced by this Court in the cases to which reference has been made the plaintiff was guilty of such negligence as largely contributed to the injuries sustained if indeed her negligence under the circumstances does not preclude her from recovering at all. Doubtless however she was confused and mislead from her obvious duty in the circumstances by the negligent act of the railroad employee in causing the green light to be shown, if it was shown at that time, as to which the

evidence is by no means clear. The jury however seemed to have accepted the evidence which tended to show that the green light was exhibited when it should not have been, but the jury seemed not to have apportioned the damages according to the amount of fault attributable to the parties respectively.

The point is made that as Murray was not a railroad company the rule that plaintiff's contributory negligence absolves him from all liability applies in his case.

Any person in the service of a railroad company who by his negligence causes an injury to be committed to another by the machinery of the railroad company for which he acts is as much a tort feasor as his principal and the rule for ascertaining the damages sustained applies to him as to his principal. Operating railroad trains is a dangerous service. They are operated by the activities of the agents and employees of the corporation. When an agent by his carelessness and inattention to duty causes an injury to another person such agent cannot obtain deliverance by a rule which does not apply to his principal. He cannot be heard to say that while his negligent act was the cause or contributed to the cause of injury and his principal is bound on account of it to requital that he is absolved by a different rule of responsibility which condones his carelessness but visits it upon his principal.

There are many assignments of error founded upon instructions to the jury requested and refused as well as some given.

Instruction number two, which was given at plaintiff's request, informed the jury that when an agent is employed by several principals they are jointly and severally liable for the agent's wrongful act toward third parties while acting in the scope of his employment and acting in behalf of all and a joint and several liability attached for the wrongful act of the joint agent although at the

time of the injury he was engaged in performing a service for one of the principals only; that the liability of joint employers is not affected by the fact that such agent is paid by one of the employers.

The same point was presented in the fiftieth assignment of error which was abandoned but it is presented again by the objection to the instruction above mentioned.

The instruction correctly embraced the rule which is generally recognized; that where a servant is jointly employed by two masters the latter are jointly and severally liable for the servant's wrongful act toward third parties committed while acting in behalf of all. See 39 C. J. 1278.

It is doubtless true that a person may serve two masters whereby reason of the nature of his duties he is not subject to conflicting and divergent authority which, as the Bible states, will lead him to ''hate the one, and love the other; or else he will hold to the one, and despise the other''. It may also be true that one cannot be subject to two controlling forces which may at the time be divergent and, as said in Atwood v. Chicago I. & P. Ry. Co., 72 Fed. Rep. 447, there can be no application of the doctrine of respondeat superior in the case of two distinct masters; that the servant must be subject to the jurisdiction of one master at one time.

It may be within the field of lawful and convenient arrangement that under certain conditions, and even in the circumstances that Murray worked for the two railroad companies, an agent's services to be rendered to one principal would in no wise benefit the other nor be directed or controlled by it. Such services would be none the less separate because they might be identical in character. There is much apparent conflict among the authorities on the question of the liability of joint employers of a single agent for the negligent act of the latter. The decisions, however, turn upon the application

of the doctrine of respondeat superior which rests upon the maxim *"qui facit per alium facit per se"*.

Mr. Justice Brown, in his dissenting opinion in the case of Moore v. Southern R. R. Co., 165 N. C. 439, 81 S. E. Rep. 603, 51 L. R. A. (N. S.) 866, said:

> "It is surely permissible for one person to act as agent for two others in performing separate and distinct duties at different times for each principal without making both principals liable jointly for all his acts, there being no partnership or privity between the principals."

Mr. Justice Walker concurred in that view. Mr. Chief Justice Clark, who delivered the majority opinion in the case seemed not averse to that doctrine. He said:

> "According to the evidence above set out, it appears that Wall was the joint agent of the two railroads, and operating the joint baggage room at the union depot in their behalf. *That being so, it cannot be said that any one service was done by him at the responsibility of one railroad and the other service at the responsibility of the other."* (Italics mine.)

Upon that premise the court held that the plaintiff could have sued either or both roads at her option. The facts in the case were as follows: A baggage agent of the Southern Railroad Company left a loaded pistol in a drawer in the desk of the baggage room. The pistol was lying on some baggage checks. Wall, the joint agent of the Southern and the Norfolk & Western, went to the desk to get baggage checks of the latter road. The Southern Railway train had been loaded with baggage and had gone. Wall was negligent in removing the pistol to get the Norfolk and Western baggage checks. The pistol was discharged resulting in the death of the plaintiff's intestate.

Buchanan v. The Chicago, M. & St. P. Ry. Co., 75 Iowa 393, 39 N. W. Rep. 663, is a case the facts of which are similar to those of the case at bar. Three flagmen were employed by three railroads which crossed three avenues

intersecting fourth street. The Chicago, Milwaukee and St. Paul Ry. Co. employed the flagman at Third Avenue. The accident occurred on the track of the Chicago & Northwestern. The flagman was negligent in attending to his duties. It was contended that at the time the flagman was performing services for the Chicago & Northwestern, whose train was crossing Third Avenue on its track. The contention was not sustained and the plaintiff was allowed to recover against the Chicago, Milwaukee & St. Paul Company, which employed the flagman at that crossing. There was an agreement between the railroads under which each employed one flagman, one to be stationed at First Avenue, another at Second and a third at Third Avenue.

Where there is a community of interest between the employers, where they are engaged in a common enterprise or there exists privity of interest between them, their employment of one agent renders all the principals liable in damages for injuries resulting from the agent's negligence. It is not a question of which employer pays the agent, nor is the question of liability dependent upon the nature of the arrangement between the two employers as to the agent's compensation. See Schoen v. Chicago, St. P. M. & O. R. Co., 112 Minn. 38, 127 N. W. Rep. 433, 45 L. R. A. (N. S.) 841; Louisville & N. R. Co. v. Breeden's Adm'r, 111 Ky. 729, 64 S. W. Rep. 667; Schulte v. Louisville & N. R. Co., 128 Ky. 627, 108 S. W. Rep. 941; Boucher v. New York, N. H. & H. R. Co., 196 Mass 355, 82 N. E. Rep. 15, 13 L. R. A. (N. S.) 1177; Denver and R. G. R. Co. v. Gustafson, 21 Colo. 393, 41 Pac. Rep. 505.

Applying this rule to the case at bar the instruction was misleading in that it omitted the element of a common interest on the part of the railroads in guarding the two crossings as one enterprise of a common interest to the two employers. Whether under the terms of the contract, the physical conditions existing at the location of

the two crossings, the juxtaposition of the railroad tracks, the environment or surrounding physical objects rendered the matter of guarding the place and protection of travelers upon the highway from the danger of passing trains one of mutual or common interest. If so and the agent or flagman was employed by them in that behalf then the two railroads are jointly liable for the negligence of their joint employee. It is a question of fact for the jury to ascertain from all the evidence.

The charge assumed that such were the facts, or that the fact of serving the two railroad companies rendered him ipso facto their joint agent. This was error and harmful to one of the defendants, the Atlantic Coast Line Railroad whose liability, if any, rested upon the assumption that the two railroad companies jointly engaged Murray, the watchman or flagman, to guard the two crossings as constituting a point of common interest to the two railroads as a dangerous area in approaching which travelers upon the highway should be warned by appropriate signals of approaching trains. If both railroads used the same crossing there would be little or no doubt of the joint undertaking of the two railroad companies, but as there were two crossings, each company using its own crossing independent of the other, tracks separated by a distance of some seventy feet, neither company having any interest in the other's crossing, it becomes material whether by agreement or custom the two companies had made of the two crossings a single point of mutual or common interest, a location or area of danger to be jointly guarded by them.

Many charges given by the court involved the question of the joint agency of Murray for the two railroad companies and there was no instruction to the jury upon the conditions necessary to constitute such joint agency. Those conditions in all the charges were assumed to exist which rendered them harmful to one of the defendant companies whose liability, if any, as stated depended

solely upon the character of Murray's employment. If the plaintiff had elected to sue, as she might have done, each tort feasor in a separate action, in the action against the Atlantic Coast Line for damages for the injury committed by the Seaboard Air Line upon its track the plaintiff in order to have made her case would have been required to show that Murray was jointly employed by the two railroads to guard each track and that in the services required of him for each he was also the servant of the other. In the joint action she was required to make the same showing which the instructions given did not cover but rather assumed to have been established.

It is a familiar law that instructions which assume the existence of disputed material facts are erroneous. See Ferguson v. Porter, 3 Fla. 27; Ashmead v. Wilson, 22 Fla. 255; Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 South. Rep. 338; Southern Pine Co. v. Powell, 48 Fla. 154, 37 South. Rep. 570; Holman Live Stock Co. v. Louisville & N. R. Co., 81 Fla. 194, 87 South. Rep. 750; Williams v. La Penotiere, 32 Fla. 491, 14 South. Rep. 157.

There are many other assignments of error the discussion of which would extend this already too long opinion to unreasonable length and be of no practical benefit to either trial court or the bar. The case of Mrs. Ebert in which she seeks damages for the alleged wrongful death of her husband is in no sense an intricate or complex one. The fact of the injury, the alleged negligent act of the flagman, the character of his agency whether joint or several, the contributory negligence of plaintiff, if any existed, and the measure of damages are facts to be ascertained by the jury and would seem not to require the solution of any very complex questions or such a multiplicity of words in pleadings and evidence to submit them for the consideration of the jury.

In another trial of the cause the trial court may not be confronted by the same questions involving the admis-

sion and rejection of evidence and the charges requested and denied as well as those given to which exception was taken and counsel may just as well be advised that Section 4499 C. G. L. 1927, commonly called the "Harmless Error Statute", was designed to make summary disposition of many assignments of error which an examination of the entire case shows to be veritably the labor of one "who struts and frets his hour upon the stage and then is heard no more".

For the errors pointed out the judgment is reversed and a new trial ordered.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.

***

### ON REHEARING

ELLIS, J.—Upon reconsideration of this case a majority of the members of the court are of the opinion that the exercise of the caution required of a traveler on a public highway who desires to cross a railroad track lying across the highway, under the circumstances under which the defendant in error in this case, Mrs. Ebert, crossed the track, is placed by the original opinion at too high a standard. That she was relieved by the false signal of security from the duty to use such care and prudence to ascertain if a train is actually approaching upon the track as expressed in Seaboard Air Line Ry. Co. v. Myrick, 91 Fla. 918, 109 South. Rep. 193; Atlantic Coast Line R. Co. v. Weir, 63 Fla. 69, 58 South. Rep. 641, Ann. Cas. 1914A 126, but on the other hand that duty is measured by the circumstances or conditions existing at the crossing at the time. See Atlantic Coast Line R. Co. v. Watkins, 97 Fla. 350, 121 South. Rep. 95; Egley v. Seaboard Air Line R. Co., 84 Fla. 147, 93 South. Rep. 170.

The view of the majority being that Mrs. Ebert being assured by the appearance of the green light, which at the

time she desired to cross the track was a false assurance of safety, was justified in believing that the train, which she saw approaching, or could have seen by the exercise of reasonable caution, would stop before it arrived at the crossing, thus allowing her to pass in safety. To state the proposition differently: The railroad company's agent, the flagman or signal light operator, is supposed to have knowledge of the movement of the railroad company's trains at the point of danger and would not give assurance of safety to a traveler desiring to cross the track if it was the purpose of the train operators to cause the train to be driven over the track at the crossing at that time, therefore Mrs. Ebert was justified in the belief that it was safe for her to cross notwithstanding the fact that she saw or could by the exercise of reasonable caution have seen the approaching train in time to have avoided it.

With this view Mr. Justice Terrell and the writer are not wholly in accord. Self preservation, the desire to live and to preserve one's body from serious injury, is a perfectly normal motive or influence in personal conduct, therefore to cross a railroad track in front of an approaching train of railroad cars near the crossing whatever may be the flagman's assurances of safety violates the impulse to preserve life and secure the body from injury and is a degree of carelessness amounting to contributory negligence in the case of injury resulting from a collision between the train and the automobile in which the traveller on the highway is traveling. It may be assumed that such violence to a normal impulse is mitigated or increased by the distance of the approaching train from the crossing and the rapidity of its approach.

It is also the view of the majority in which Mr. Justice Terrell and the writer concur, that the question of contributory negligence was submitted to the jury and in estimating the damages sustained made due allowance

for the contributory negligence of which Mrs. Ebert may have been guilty. The amount of damages sought by the plaintiff was fifty thousand dollars, the amount of the verdict was fifteen thousand dollars. The evidence would have warranted a larger verdict if there had been no contributory negligence upon the part of Mrs. Ebert, therefore in this regard the verdict should not be disturbed.

On the question of joint agency the majority view is that the contract of employment of Murray as flagman or manipulator of the signal lights, was a joint employment by the two railroads. That the character of his employment was fixed by the terms of the contract which was submitted in evidence, that the area he was to guard as such flagman or manipulator of signal lights is shown by the contract to have been considered by the two railroads as a point of common interest in which they were equally concerned by their duty to protect travellers upon the public highway against its dangers. That this feature of the case was also sustained by the evidence supplementary to the written contract.

The writer is not wholly in accord with this view because of the existence of a safety zone between the tracks of the two railroad companies which is entirely consistent with the view that while the employment of Murray was joint, his duties were several. The writer is free to admit however that his views would be strengthened if it had appeared that each light was double faced and operated independently. That is to say that the danger, caution and safety glow of the lights appeared on each side of each light and each light operated independently.

The court considered therefore that the conclusion reached in the first opinion should be recalled, and the judgment of the trial court affirmed.

It is so ordered.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs specially.

BROWN, J. (Concurring specially) : Upon reconsideration of this case on rehearing, the majority of the court, including the writer, have become convinced that, under the contract between the two Railroad Companies and the evidence as to the physical facts, the court below did not commit error by giving those instructions to the jury which assumed the joint agency of Murray, the signalman, who was employed by the companies jointly to guard a common zone of danger, in the protection of which they each had an interest.

I am inclined to think that the question of whether Mrs. Ebert or her husband were guilty of contributory negligence was, under the evidence, a question for the jury. The jury evidently found that the plaintiff was guilty of some degree of contributory negligence. This is indicated by the amount of the verdict.

While travellers along a street approaching a railroad crossing may, according to the facts and circumstances of the particular situation, as a general rule, be justified in relying upon the signals given by the Railroad Company or Companies as to whether they should stop or should proceed across the crossing, I am not prepared to say that the existence of such a signaling system would in all cases relieve the traveller from all responsibility for the use of his own faculties of sight and hearing to protect himself from danger. There may be cases where the physical facts of the situation renders it both reasonable and necessary that the traveller concentrate his attention entirely upon the signals, there being little or no opportunity for him to judge the question of safety or danger by the use of his own faculties, due to obstructions to the view the rapidity of the approaching train outside his radius of vision, or other like handicaps. As above stated, on the evidence in this case I think the question of contibutory negligence was one for the jury to determine.

For these reasons I concur with the majority that the judgment of the trial court should be affirmed.

Affirmed.

WHITFIELD AND TERRELL, J.J., concur.