921 So.2d 825 (2006)
Michael CARR, by and through Diane Carr, his parent and natural guardian, Appellant,
v.
SCHOOL BOARD OF PASCO COUNTY, Florida, Appellee.
No. 2D05-2388.
District Court of Appeal of Florida, Second District.
March 3, 2006.
*826 Morgan L. Gaynor of Mark S. Roman, P.A., Clearwater, for Appellant.
R. Elliott Dunn, Jr., of McClain & Alfonso, P.A., Dade City, for Appellee.
ALTENBERND, Judge.
Michael Carr, by and through his parent and natural guardian, Diane Carr, appeals an order granting the School Board of Pasco County a new trial in his negligence action for bodily injuries. Michael Carr sustained a severe injury to his knee while running on a track during a physical education class at Hudson High School in August 2002. The trial court's order, entered after the jury rendered a verdict in favor of Michael Carr in a bifurcated trial on liability, is unusual. It does not grant a new trial because the jury's verdict was contrary to the manifest weight of the evidence. Instead, it grants a new trial on the theory that the plaintiff presented no evidence that the School Board was on actual or constructive notice of a dangerous condition. The School Board never moved for a directed verdict in this case, and there was ample evidence that the teachers at the track knew or should have known of a dangerous condition. Accordingly, we reverse the order granting new trial. We remand for the trial court to reinstate the jury's verdict and to continue with a trial on the remaining issue of the amount of damages Michael Carr sustained.
At the beginning of the school year in 2002, Hudson High School was participating in the "President's Challenge," a physical activity and fitness awards program. Students were required to participate in various events to test their strength and stamina. One of the events required the students to walk or run a timed mile on the track. Michael Carr participated in this event during the fifth period of the school day.
Michael was fifteen and hoping to earn a position on the school's wrestling team. He decided to do his best in the run in hopes that he would impress the coaches. There were approximately 100 students on the track at the same time for this event. The walkers were expected to stay in the outside lanes, while the faster runners moved to the inside lanes.
When the race started, Michael and several other runners broke out of the pack. On the second lap, as they ran down the backstretch, Michael had already moved into the innermost lane and was running immediately behind another boy. Although the evidence was disputed as to how the accident occurred, it appears that either the runner in front of Michael suddenly moved to the right or another impediment required Michael to suddenly move to the left. A step or two later, Michael ran into a metal bench. He struck the bench with his right knee, displacing his kneecap to the outside of his leg.
The bench was a fifteen-foot, movable aluminum bench used for football practices on the athletic field. There was some dispute among the witnesses who testified at trial as to whether the bench was directly on the track when Michael ran into it or whether it was immediately adjacent to the *827 track. However, a student who witnessed the accident testified that the bench was angled onto the track from the grass and that the accident occurred "more on the concrete than the grass." Further, a teacher who arrived after the accident found the bench angled onto the track with approximately half of the bench on the track. Michael testified specifically that he never left the track and that the portion of the bench he hit was on the track.
One of the physical education instructors testified that the benches were normally kept on the grass six feet from the inside edge of the track, but that the benches were moved when the grass was cut. This instructor noted that the normal location of the benches was chosen "for safety to run on the track." There is no dispute that several teachers were on the field that afternoon to supervise the students on the track, and they would have had ample opportunity to examine the exact location of all objects on or near the track prior to the event. However, no teacher actually testified that he or she saw the bench in a dangerous location prior to the start of the race.
This case was submitted to the jury on the standard premises liability theory explained in Florida Standard Jury Instruction 3.5(f). Thus, the jury was asked to determine whether the School Board negligently failed to maintain its property in a reasonably safe condition, failed to correct a dangerous condition of which it either knew or should have known by the use of reasonable care, or whether it failed to warn Michael Carr of a dangerous condition concerning which the School Board's employees had, or should have had, knowledge greater than that of Michael Carr. The parties agreed upon a general verdict form, and the jury returned a verdict finding the School Board negligent. The jury found no negligence on the part of Michael Carr.
The School Board had not moved for a directed verdict during the trial and did not move for a judgment notwithstanding the verdict after the trial. However, the School Board filed a motion for new trial. It alleged that "the jury's verdict was contrary to the evidence, and contrary to the law," and that "the jury's verdict was contrary to the manifest weight of the evidence, in that the evidence clearly supported a finding of some degree of negligence on the part of Michael Carr, yet the jury found none." The School Board also filed a memorandum in support of the motion for new trial, arguing that Carr had failed to prove the School Board had actual or constructive knowledge of the alleged dangerous condition. After the hearing on the motion for new trial, the trial court took the matter under advisement and inexplicably granted a directed verdict, entering a final judgment in favor of the School Board.
Michael Carr moved for relief from this judgment, pointing out that the School Board had never moved for a directed verdict. The trial court then entered an order granting relief from the judgment but also granting the School Board a new trial. The order explained that the plaintiff presented "no evidence from which a jury might infer actual or constructive notice to [the School Board] of that dangerous condition." Accordingly, the trial court concluded that the verdict was "contrary to the evidence, and to the law."
Although it is common for lawyers to move for a new trial on the grounds that a verdict is "contrary to the evidence, contrary to the law, and contrary to the law and the evidence," or some variable of these grounds, such grounds without greater specification do not appear to have been the reported basis for a new trial on *828 the issue of liability in many years. The most recent cases discussing these grounds appear to be Bailey v. Sympson, 148 So.2d 729 (Fla. 3d DCA 1963), and Bell v. Tarvin, 163 So.2d 300 (Fla. 1st DCA 1964).[1] Our research suggests that this court last relied on these grounds in 1958. See Tampa Sand & Material Co. v. Johnson, 103 So.2d 250 (Fla. 2d DCA 1958).[2] The supreme court held that these grounds were not sufficient to preserve an issue for review in an older workers' compensation case. See Shell's City, Inc. v. Coles, 145 So.2d 489 (Fla.1962). The demise of these grounds as a basis for a new trial may have occurred in large part due to the supreme court's opinion in Cloud v. Fallis, 110 So.2d 669 (Fla.1959), which clarified that a trial judge had discretion to grant a new trial when the verdict was "against the manifest weight of the evidence." Id. at 673.
As the law has developed since Cloud, a trial judge may grant a new trial on the issue of liability  at least in the absence of specific jury misconduct  when he or she becomes aware of a specific prejudicial legal error or when he or she finds that the jury's verdict is contrary to the manifest weight of the evidence. See Krolick v. Monroe, 909 So.2d 910, 914 (Fla. 2d DCA 2005); see also Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999); Tri-Pak Mach., Inc. v. Hartshorn, 644 So.2d 118 (Fla. 2d DCA 1994). When a trial judge grants a motion for new trial, he or she must articulate the reasons for the new trial in the order. Brown, 749 So.2d at 497; Fla. R. Civ. P. 1.530(f). Here, the grounds the trial court articulated in its order granting a new trial do not establish a valid basis for a new trial.
The trial court gave the standard instruction for use in such a premises liability case, and there is no suggestion that any legal error contributed to the verdict. It is apparent from the order granting a new trial that the court believed that Michael Carr had an obligation to prove that the bench was actually protruding into the running lanes on the track and that this condition had existed long enough for the teachers to discover the condition. Because the trial court's order refers to the bench as "that dangerous condition," we assume that the trial court accepted the testimony that the bench was in the first lane at the time of the accident but concluded that Michael Carr's testimony could place the bench in that lane for only a second or two. We believe that the trial court made an error of law in this regard.
Michael Carr did not slip on a banana peel or some other transitory foreign object or substance that had fallen on the track. See, e.g., Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 320 n. 4 (Fla.2001) ("`[A]ctual or constructive knowledge is irrelevant in cases not involving transitory, foreign substances (i.e., the typical banana peel case), if ample evidence of negligent maintenance can be shown.' Mabrey v. Carnival Cruise Lines, Inc., 438 So.2d 937, 938 (Fla. 3d DCA 1983)."). He ran into a large metal bench that was owned and maintained by the School Board. At trial, there was considerable conflict in the evidence and debate among the lawyers as to whether the bench was on or merely near the track *829 immediately preceding the race. This debated issue, however, may not have been critical to the jury. This was not a race among a handful of elite racers. The teachers had placed 100 teenagers on a track. The teenagers were trying to both run and walk in a competitive event. Most, if not all of them, had limited experience running track. Whether a bench was on the track or merely a few inches from the edge of the track, a jury could determine that it was reasonably foreseeable that an inexperienced runner, racing in a crowd, could strike the bench and sustain a significant injury. This determination was specifically supported by the testimony of one of the instructors that the benches were traditionally kept six feet from the track for this very reason.
Even if this large metal bench could be deemed a "transitory" object, there was no evidence that students were moving the benches or disturbing them in any fashion during this race. Certainly the coaches and instructors were there to supervise the students and ensure the orderly and safe progress of the competition. The jury could reasonably conclude that the bench was either on or immediately adjacent to the lane intended for the fastest group of runners when the coach blew his whistle to begin the race. This evidence would create an issue for the jury under either a negligence maintenance or a constructive notice theory as presented in the standard jury instruction. See Owens, 802 So.2d 315; Everett v. Rest. & Catering Corp., 738 So.2d 1015 (Fla. 2d DCA 1999); § 768.0710(1), (2)(b), Fla. Stat. (2002).
Thus, to the extent the trial court granted a new trial because it concluded there was no competent, substantial evidence to show that the School Board had actual or constructive knowledge that the aluminum bench was on the track and that this constituted a legal error requiring a new trial, the trial court was mistaken in its application of the law. Michael Carr did not need to present such evidence to support his claim, and in fact some evidence of constructive notice was presented.
If the trial court intended to grant a new trial on the ground that the verdict was contrary to the manifest weight of the evidence, even though the trial court did not explicitly state this as a ground for a new trial, such a ruling would have been an abuse of discretion. In Cloud, 110 So.2d 669, the supreme court stated:
When the judge, who must be presumed to have drawn on his talents, his knowledge and his experience to keep the search for the truth in a proper channel, concludes that the verdict is against the manifest weight of the evidence, it is his duty to grant a new trial, and he should always do that if the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record.
Id. at 673.
The supreme court further explained this principle in Laskey v. Smith, 239 So.2d 13 (Fla.1970):
A jury's determination of damage is reviewable by the trial judge on precisely the same principles as govern his superintendence of determinations of liability.... The record must affirmatively show the impropriety of the verdict or there must be an independent determination by the trial judge that the jury was influenced by considerations outside the record.
In other words, the trial judge does not sit as a seventh juror with veto power. His setting aside a verdict must be supported by the record, as in Cloud v. Fallis, Fla.1959, 110 So.2d 669, or by findings reasonably amenable to judicial review.
*830 Id. at 13; see also Wackenhut Corp. v. Canty, 359 So.2d 430, 434-35 (Fla.1978).
Here, the trial court's conclusions regarding the proof of constructive notice were akin to the trial judge sitting as a "seventh juror" in the case. The evidence to support the general verdict was ample and in many respects undisputed. The record therefore reveals no indication that the verdict was against the "manifest weight" of the evidence presented. In addition, there is no indication that the jury was deceived by that evidence or improperly influenced as to its import or weight. Indeed, because the issue of damages had been bifurcated, the jury heard little regarding the extent of Michael Carr's injury nor any other emotional testimony. Accordingly, the trial court erred in granting this new trial.
Reversed and remanded for reinstatement of the verdict and continued proceedings regarding damages.
STRINGER and KELLY, JJ., Concur.
NOTES
[1] But see Madsen, Sapp, Mena, Rodriguez & Co. v. Leaman, 686 So.2d 780 (Fla. 4th DCA 1997) (requiring a new trial because the damages awarded were "contrary to the evidence and the law").
[2] These grounds were more common in the era when assignments of error were required in civil appeals because they were used as generic assignments of error. See Seaboard Air Line Ry. v. Ebert, 102 Fla. 641, 138 So. 4 (1931).