SEABOARD AIR LINE RAILWAY COMPANY, *Plaintiff in Error,* v. H. J. MYRICK, *Defendant in Error.*

Division A.

Opinion Filed May 14, 1926.

*W. J. Oven,* for Plaintiff in Error;

*W. C. Hodges* and *Fred H. Davis,* for Defendant in Error.

ELLIS, J.—The defendant in error, who lives in Thomasville, Georgia, and has a saw mill business at Woodville, Florida, was making a trip in his automobile in June, 1922, from Woodville to Tallahassee, a distance of about nine miles. At the point where the railroad crosses the public road the defendant encountered a train of the railroad company en route from Tallahassee to Covington. The crossing is about three miles from Tallahassee, by way of the public road, and about six miles from Woodville.

As a result of the collision the defendant in error sustained some physical injuries which are not specifically described in the declaration nor, as for that matter, in the evidence; and suffered the loss of his automobile which Myrick, the plaintiff below, said was completely destroyed.

An action was brought by Myrick against the railroad for damages for personal injuries and for the destruction of the automobile.

The railroad pleaded not guilty; denied that the plaintiff was lawfully operating the automobile on the public highway in making the journey from Woodville to Tallahassee; averred that the plaintiff carelessly drove the automobile at high speed upon the railroad crossing in front of the approaching train without making any effort to ascertain whether the train was approaching, notwithstanding he knew of the defendant's use of the railroad track over the crossing; and that the plaintiff when approaching the crossing made no effort to ascertain whether the defendant's train was approaching or about to cross the highway.

The plaintiff joined issue upon these pleas. There was a trial and verdict for the plaintiff in the sum of two thousand dollars.

The railroad company seeks to reverse the judgment here on writ of error.

The assignments of error attack the sufficiency of the evidence to sustain the verdict and the correctness of certain charges given by the court to the jury.

The declaration rests upon the allegations that the defendant company "negligently and carelessly manipulated, ran, operated and managed its certain locomotive and train of cars" over its railroad at the point where the accident occurred when it occurred; that the locomotive struck the plaintiff's automobile in which he was riding and that the plaintiff was injured and the automobile was ruined.

The pleas interposed were in substance a denial of the defendant's negligence in operating its locomotive and train of cars; a denial that the plaintiff was lawfully operating his automobile upon the public highway at the time of the accident; an averment that the plaintiff's injury resulted from his own carelessness in driving his automobile upon the defendant's track in front of the approaching train and that he was guilty of contributry negligence in driving upn the defendant's track without taking any precautions to ascertain whether a train was approaching.

The evidence was sufficient to warrant the finding that the defendant's locomotive struck the plaintiff's automobile in which he was riding, destroying the automobile and injuring the plaintiff. The injuries he sustained were painful but not serious according to the evidence of the physician. Under the issue of not guilty, the injury being shown to have been committed by the defendant in the running of its train, the presumption that it was through the negligence of the railroad that the injury was inflicted obtains against the defendant railroad, but such presumption does not outweigh proofs and it ceases when the company makes it to appear that its agents have exercised all ordinary and reasonable care and diligence. See Section 4964, Revised

General Statutes; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; Jones v. Jacksonville Electric Co., 56 Fla. 452, 47 South. Rep. 1; Seaboard Air Line R. Co. v. Thompson, 57 Fla. 155, 48 South. Rep. 750; Seaboard Air Line Ry. v. Moseley, 60 Fla. 186, 53 South. Rep. 718; Florida East Coast R. Co. v. Welch, 53 Fla. 145, 44 South. Rep. 250; Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 South. Rep. 235; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 South. Rep. 195.

As the learned judge who tried the case charged the jury: The rights and obligations of a railroad company and travelers on a public highway are reciprocal at the crossing of a railroad and public highway, but the railroad company's trains have the right of way and all persons on the highway should give precedence to the passing trains of the railroad company at the crossings. It is therefore as much the duty of a person, traveling upon the public highway, who is about to cross a railroad track to use ordinary care and prudence to ascertain if a train is approaching upon the railroad track as it is the duty of the railroad company to warn, by appropriate signals, all persons who may be upon the public highway, of the approach of a train about to cross the public highway. The statute merely places upon the railroad company the burden of showing affirmatively that such warnings were given whenever an action for damages for personal injury or injuries to property grows out of a collision between a train of the railroad company and a traveler on the public highway at a crossing. Seaboard Air Line Ry. v. Smith, *supra.*

In the case above cited Mr. JUSTICE HOCKER, speaking for the court, said: "It must not be forgotten that a railroad company has not only a right to operate its trains but it is its duty to operate them, and while it should always observe reasonable precautions to prevent injury, it is not to be required to observe unreasonable ones." That

"the duty of a railroad company in operating its trains is always conditioned by the exigencies of any particular situation, and to be ascertained from them, and this is true, independent of the statutory provisions."

If the question of whether the railroad company has failed to observe ordinary precaution, when one of its trains approaches a public crossing and whether such failure is the proximate cause of any injury that may occur to a traveler upon the public highway, is to be determined by the jury, it must be determined from the evidence as any other fact in the case is determined. There exists no arbitrary power in the jury to disregard evidence and place the blame upon the railroad company for any injury that may occur to a traveler on the highway by a passing train of cars. If in a given case the defendant railroad company by evidence shows that its employees used such ordinary precautions as the exigencies of the case required to warn all persons who might be upon the public highway near a crossing of the approach of a train, a traveler who may be injured by the train cannot recover damages from the railroad company for such injuries unless he makes it to appear from the evidence that the defendant company was guilty of negligence in failing to observe some duty which it owed to the public in general, or to the injured person in particular, and that such failure was the proximate cause of the injury.

It is not alone sufficient for the injured plaintiff to say that he "did not see" the approaching train, nor hear any whistle or bell or noise of its approach, in order to overcome positive evidence that all ordinary warnings were given of the train's approach. When negative testimony is relied upon to contradict positive evidence it should appear that the negative statements were made by persons whose attention was directed to the fact, that they were looking, watching and listening for the fact. Not only that the opportu-

nity for observing the fact existed but that their attention was directed to the fact. The word "see" or "hear" when used in a negative statement is often used to express the negation of apprehension or conscious knowledge. One may see or hear and yet not observe; that is, not have a conscious knowledge of the object or noise he actually sees or hears and ordinarily when questioned as to the fact will say that he did not see or hear. Yet, it is certain that in a case like this the defendant cannot be held liable for a failure of duty because the noise of the approaching train, the sounding of its whistle and ringing of its bell, failed to awaken the mental activity of the person injured to that degree where he could be said to have had a conscious knowledge of the existence of the warning sounds.

A mere statement that "I did not see or hear" the train or the noise made by its approach as against affirmative evidence of credible witnesses that it did approach and made sufficient noise in doing so reasonably to attract the attention of others cannot be said to create a conflict of evidence justifying a submission of the question to the jury. See Culhane v. N. Y. Cen. & H. R. R. Co., 60 N. Y. 133; Tolman v. Syracuse, B. and N. Y. R. R. Co., 27 Hun. 325; McKeever, Administratrix, v. The New York Central and Hudson River Ry. Co., 88 N. Y. 667.

When the accident occurred, which is the foundation of this action, the defendant's train was approaching the crossing from the west; the plaintiff was traveling in an automobile upon the public highway going north. When he approached the railroad crossing the train was to his left. About one hundred and sixteen feet south of the crossing a small house stands upon the the west side of the highway. The vacant lot between that house and the railroad right of way afforded no obstruction to a clear and open view of a train approaching from the west, except what

may have been afforded by small vegetables and young corn and small trees and undergrowth. The cut, through which the railroad track passes just as it emerges upon the highway, is about four or five feet deep, therefore about five or six feet of the upper part of the engine and cars was visible above the south bank of the cut. The time was about midday. The train was traveling at about twelve or fifteen miles an hour and the plaintiff was driving his automobile at the same rate of speed. The plantiff testified that "in approaching that track I looked to see if the train was coming, I always look. I did not see any. I heard the whistle blow just as I got on the track, not before that. It was right on me. It had come out into the crossing before it blew." In the same statement he said: "After I passed those houses and just a little piece from the track the whistle blew and just as I got in the track it ran into me. The train was right on the road when it blew."

The person who was in the automobile with the plaintiff said, "I did not hear any bell ring or whistle blow. If they did I ain't heard it." Yet he said, "The train was going down the rails batting it pretty well," by which it may be inferred that he saw the train coming. One other witness for the plaintiff said that he lived within a quarter of a mile of the crossing; that the train sometimes blows signals for the crossing and sometimes not; that he "didn't hear it if it blew any on June 8, 1922, the day of the accident."

As against this evidence of the defendant's failure to give a proper warning of the approach of its train was the positive affirmative testimony of twelve witnesses, of whom the train crew, consisting of the engineer, fireman, flagman, two brakemen and the conductor were six, the remaining six witnesses were persons who were near the crossing and one passenger on the train, that signals were given of the train's approach in time to warn travelers on the highway.

This showing of the defendant's exercise of reasonable care cannot be said to have been disproved by the evidence of the plaintiff, if, indeed, it was contradictory at all.

As to the plea of contributory negligence the evidence was quite complete.

The plaintiff knew of the existence of the crossing; he had passed many times before; knew that the railroad track was in use. There was a railroad crossing sign at the crossing. The vegetables and small trees and undergrowth to the left of the road near the crossing prevented him from seeing the train, even the "smoke from the locomotive." This circumstance, if true, should have been a warning to be cautious and exercise reasonable prudence for safety before attempting to cross. It appears that the plaintiff did not check the speed of his automobile as he approached the crossing. He said: "Time I got in view I looked down the track and the train was right on me."

It is impossible to reconcile the plaintiff's conduct upon the occasion of his injury with the slightest degree of prudence which a normal person should exercise in driving an automobile across a railroad track which crosses a public highway, in view of the conditions existing at the time and place.

The defendant's showing that its agents and employees used all ordinary caution in operating the train as it approached the crossing was not overcome by the defendant's testimony nor that of his witnesses and there was a lack of evidence to sustain the allegation of negligence.

So the judgment is reversed.

BROWN, C. J., AND WHITFIELD, TERRELL AND BUFORD, J. J., concur.