ATLANTIC COAST LINE RAILROAD CO. v. ANNIE E. CLEMMONS.

150 So. 789.

Opinion Filed October 31, 1933.

Petition for Rehearing Denied November 23. 1933.

*R. A. Burford,* and *L. W. Duval,* for Plaintiff in Error; *R. L. Anderson* and *D. Niel Ferguson,* for Defendant in Error.

PER CURIAM.—In this case Mr. Chief Justice DAVIS, Mr. Justice WHITFIELD and Mr. Justice BROWN are of the opinion that liability of the railroad company was shown, but that the jury did not sufficiently diminish the amount of damages in proportion to the negligence attributable to the driver of the truck, and that the judgment be affirmed only on condition that remittitur of $2,500.00 of the amount of the judgment as of the date of the judgment be entered within thirty days after the going down of the mandate herein, otherwise the judgment to stand reversed.

· Mr. Justice ELLIS, Mr. Justice TERRELL and Mr. Justice. BUFORD are of the opinion that no liability whatsoever has been shown and that the judgment should be unconditionally reversed.

All the Justices are agreed that since the judgment must be affirmed on the authority of ·State ex rel. Hampton v. McClung, 47 Fla. 224, 37 Sou. Rep. 51, because of the equal division of the Court, that the judgment should be affirmed upon that authority only on condition that a remittitur be entered by plaintiff in the amount suggested by those Justices of this Court who favor affirmance on condition of remittitur, the Justices favoring reversal voting therefor in order to avoid unduly prolonging the litigation in this Court, it appearing that the Justices after repeated conferences, are equally and permanently divided on the proposition whether the judgment should be reversed.

Affirmed on condition of remittitur of $2,500.00 as of date of entry of judgment below, otherwise reversed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

BUFORD, J.—The defendant in error sued plaintiff in error for damages occasioned by the alleged wrongful death of her husband, Julius S. Clemmons.

Judgment was in favor of the plaintiff in the court below, defendant in error here.

Julius S. Clemmons was killed when a motor truck which he was driving came into collision with a steel gondola car loaded with lime rock which was being moved on the spur track of defendant's railroad immediately outside the city limits of the City of Ocala, Florida.

This gondola car was one of four which with engine and tender made up the train and the train so composed was being propelled with this gondola car and three other cars.

loaded likewise ahead of the engine on a spur track which crossed a paved highway known as Dixie Highway.

The motor truck driven by Clemmons approached the crossing on Dixie Highway and came into collision with the gondola car when the front end of the car had moved far enough to cross Dixie Highway and when the car was immediately over the highway. The impact of the motor truck against the side of the car completely derailed the car and wrecked the car and wrecked the motor truck. As we read the record, it discloses that the agents and employees of the defendant railroad company used all ordinary care and caution in operating the train as it approached the crossing; that the train was traveling at a slow rate of speed, not more than eight or ten miles per hour; that the whistle was being sounded at frequent intervals and the bell was being continuously rung; that there were two lookouts on the front car as the train moved and that the train was in plain view of one approaching the track as deceased approached it; that the lookouts on the car, when they saw that the deceased was coming within the danger zone, signaled the engineer to stop train and that brakes in good working order were immediately applied; that they also signaled the driver of the truck to stop and that another person along the side of the highway, and nearer the driver of the truck, seeing his danger, also signaled him to stop, but without any material diminution of speed, the driver of the truck, without using any care or caution, continued to approach the moving train until he struck the car with such violence as to derail it, although it was loaded, as before stated, with lime rock and was a steel gondola car.

Witnesses estimated the speed of the truck as anywhere from 25 to 40 miles per hour. The physical facts show

that the motor truck was being driven at a terrific rate of speed by one who was entirely familiar with the surroudings, who knew of the existence of the railroad track and of the purposes for which it was there, knowing that it was frequently used for the passage of trains to and from plants to which merchandise and other shipped material was delivered.

There was a standard railroad crossing sign in plain view of the driver of the truck, but the uncontradicted evidence shows that the deceased required no signal to advise him of the location of the railroad crossing, because he had been for years accustomed to drive across that track almost every day.

Many questions have been presented, but the writer, Mr. Justice ELLIS and Mr. Justice TERRELL think the disposition of this case must be governed by the opinion and judgment of this Court in the case of Seaboard Air Line Railway Company v. Myrick, 91 Fla. 918, 109 Sou. 193, and Florida East Coast Rwy. Co. v. Townsend, 103 Fla. 1198, 140 Sou. 196.

ELLIS, J., and TERRELL, J., concur.

BROWN, J.—Even though the driver of the truck was guilty of a high degree of contributory negligence, I think it was a question for the jury to determine, under the evidence in this case, whether or not the defendant in the court below was also guilty of some negligence which proximately contributed to causing the injury and death complained of.

As I see it, this case presents a situation which differentiates it from the cases cited in the proposed majority opinion. We have here a case where a railroad company, through its employees, was backing, along a spur track rarely used, a train of four heavily loaded gondola cars,

into and across a main public highway, known as the "Dixie Highway," on which traffic was heavy and constant. The railway company was chargeable with notice of this fact. The crossing in question was located a few feet beyond the limits of the City of Ocala. It is true that the driver of the truck must have known of the existence of the railroad track across the highway, but he also no doubt knew that this spur track was seldom used. While this knowledge did not relieve him of the duty of using due care as he approached the crossing, there was also a reciprocal duty resting upon the railroad company and its employees to use at least ordinary care and diligence in approaching and crossing the public highway, such as the circumstances of the case would require of an ordinary prudent person. They must have known that they were approaching and about to cross on tracks on a level with the pavement, one of the main public highways of the State; they must have known that motor vehicles were likely to pass or be passing along the highway at any time. They must have known that, as the evidence indicates, there was considerable obstruction to the view of the train crew of automobiles using the highway, as well as considerable obstruction to the view of the drivers of the motor vehicles of a train approaching along the spur track, until either the motor vehicles or the train were in dangerous proximity to the crossing. It may be true that this train was being propelled at a very moderate rate of speed, not over ten miles an hour, and that the air whistle back on the engine was being sounded at frequent intervals and the bell was being continuously rung, but it is a matter of common knowledge that ordinarily motor trucks make a great deal of noise and it is very probable that the driver of the truck could not hear either the whistle or the bell. It would seem that under these

circumstances, where a railroad company is projecting a freight train across a main traveled highway, along a spur track which is seldom used, and being chargeable with knowledge of the almost constant stream of motor vehicle traffic along such highway, some further precautions, in addition to those used in this case, should have been taken, such as sending one of the train crew ahead to flag the crossing until the train had gone by, or some other method of giving adequate warning of the approach of the train. It appears that evidence was introduced in this case to show that the train crew did have knowledge of the character of this highway and the practically constant flow of swiftly moving traffic thereover.

It is not necessary to cite cases to show that the rule is well recognized in this State that railroad employees, in operating trains, are required to exercise care commensurate with the known conditions existing at any given place. The evidence in this case shows that this crossing was, for the reasons above stated, unusually and inherently dangerous.

In recent years, public highways, by reason of the almost universal use of gasoline-propelled vehicles, have undergone a considerable evolution, or revolution, in their nature and character, requiring more effective provisions against danger. The increased highway travel in recent years is nothing short of amazing, making it imperative that corresponding adaptation of rules or standards of what constitutes due care should be made in deciding what is or is not negligence under the circumstances of any given case. As was said in Frazee v. Gillespie, 98 Fla. 582, 124 So. 6: "What would have constituted due care in the days of horse and ox-drawn vehicles would not meet the requirements of due care, or of ordinary care, in the operation of

such speedy, high-powered vehicles as our modern motor cars, if reasonable safety is to be attained."

It seems to me that the views herein expressed are fully sustained by the reasoning, and the conclusion reached, in the case of Seaboard Air Line Railway Co. v. Dayvault, 146 So. 844. It is true that in that case the railroad company had promulgated a rule which provided that, when shifting trains over public grade crossings, not protected by a watchman, a member of the crew must protect the crossing. This rule was also made to apply to engines moving backward. Thus in that case the railroad company had recognized the principle above contended for. But whether the railroad company had adopted such a rule or not, the principle would apply as a standard of ordinarily prudent conduct. The time has come in the growth and development of this State when, to my mind, the railroad companies and their employees owe it to themselves and to the public, not to propel a heavy train backward across a main and much traveled public highway, over a seldom used track at a grade crossing, without taking greater precautions than were taken in this case. It is my conclusion, therefore, that the trial court did not err in submitting this case to the jury, and that we cannot say that the jury were without foundation in the evidence for their conclusion that the defendant was guilty of some negligence proximately contributing to the injury complained of. And I am also inclined to think, from the size of the verdict and the judgment, that the jury were of the opinion that the driver of the truck was also guilty of negligence which proximately contributed to his injury and death, but that they did not sufficiently diminish the amount of damages in proportion to the negligence attributable to him.

For these reasons, I think the judgment of the court be-

low should be affirmed, provided plaintiff enters a remittitur of $2,500.00 of the amount of the judgment, as of the date of said judgment, within thirty days after the going down of the mandate herein; otherwise the case shall stand reversed for a new trial.

DAVIS, C. J., and WHITFIELD, J., concur.