**LEGH R. POWELL, JR., and HENRY W. ANDERSON, as Receivers of Seaboard Air Line Railway Company, a corporation, v. WALTER BRANAN.**

6 So. (2nd) 855                     En Banc
Opinion Filed March 20, 1942

F. P. Fleming, Fleming, Hamilton, Diver, Jones & Scott, for plaintiffs in error.

Will O. Murrell, Fuller Warren and John E. Lake, for defendants in error.

WHITFIELD, J.:

Writ of error was taken to a judgment against the railroad company's receivers awarding $8,500.00 damages to the plaintiff below.

The declaration contains the following:

"That on or about the 7th day of May, 1939, Walter Branan was walking along and upon the railroad track of the defendants at a point approximately two hundred feet west of the intersection of Pearl Street and the Seaboard Air Line tracks. That at said time and place the defendants, by and through their servants and employees, who were then and there acting in the scope of their employment, carelessly and negligently propelled and ran a railroad train against and upon the plaintiff Walter Branan, and that thereby the plaintiff was painfully, seriously and permanently injured, bruised and lacerated in and throughout his head, body and limbs, by reason thereof the plaintiff was caused to suffer great physical and mental pain and anguish and will so continue to be for a long period of time, to-wit, permanently, and the plaintiff was thereby forced to incur hospital bills in the sum of $235.20; nurses bills in the sum of $115.00; doctor's bills in the sum of $250.00, in an effort to cure himself of his said wounds; and the plaintiff was thereby rendered unable to perform his duties and services by him to be done and performed as, to-wit, a crane operator, at a salary of, to-wit, $22.00 per week, and will so continue to be for a long period of time, to-wit, permanently, and the plaintiff was thereby rendered sick, sore, lame and disordered, and will so continue to be

for a long period of time, to-wit, permanently; to the damage of the plaintiff in the sum of $25,000.00."

In addition to the plea of "not guilty" there were two special pleas which need not be quoted here.

Motion for new trial was denied, one ground of which motion being:

"The nature of the evidence adduced in this case is such that the court would be warranted in setting the verdict for plaintiff aside and granting defendants a new trial."

One of the questions proposed by plaintiffs in error under the rule is:

"Did the trial court commit reversible error in refusing to grant defendants' motion for a new trial?"

The plaintiff's testimony contains the following:

"Q. Now, Mr. Branan, was there anything up or down that track of the Seaboard that night that you could see to put you on notice that there was a train approaching? A. There was not.

"Q. Did you look both ways before you went across the track? A. Yes, sir.

"Q. Mr. Branan, tell the jury what happened when you started across that track? A. Well, when I started across that track, the Seaboard tracks, I had heard a train on the Southern tracks, we will say that is that track, I know it is the track north of the Seaboard Tracks.

"Q. Did you see it? A. I saw that train. Well, when I crossed, cut down aside the Seaboard tracks, I still heard a train and from the best of my knowledge, that was the train that I heard; but when I cut up on the path across that track, I glanced over my left shoulder, coming in a southern direction, I glanced over my shoulder and I saw no train no light or heard

no train excepting the one I figured was the other train. Well, as I was walking at an angle, not straight across the track, I walked at an angle like that (indicating), I felt the ground jarring; and walking on charcoal, as I was, I felt the ground jarring; and I looked around with my right shoulder; and as I did, as I looked, there was a train coming right on me. I don't know whether I tried to jump or not. I *through* up my hands like that (indicating), and it hit me. When I come to myself, I was laying on my face; and I got up on my knees. I realized this hand was throbbing mighty bad and was hurting, and blood come all over my face; and my right leg had been drug, and I have scars here now, that I had been drug on that right leg; that knee didn't seem to want to work, I couldn't stand up. So, I then got my bearings together—.

"Q. Did you ever see a train on the track? A. Yes. sir, I saw the back end of a freight train, the caboose, or the cab, rather.

"Q. Did you see any lights on the back end of it? A. I couldn't say whether I saw any light or not. I don't think I did.

"Q. You saw the caboose? A. I saw the caboose.

"Q. Now, did you get up? A. Yes, sir, I got up.

"Q. Where did you go from there? A. Well, I went on across the track then; got up from where I was and got into that path; and I walked to Perry Street down that path. I got to Perry Street, I got to the right side of the road, and I walked home. . . .

"Q. Did you hear any bell ring? A. No, sir.

"Q. Did it ring? A. It did not ring.

"Q. When you went on the tracks, were there any lights flashing there at the tracks? A. There was not.

"Q. To show you or anybody that there was a train? A. There was not.

"Q. How many people would you say you had seen cross that track at that time of morning, do you recall? A. I truthfully think, for about three years, I don't know, possibly fifty or seventy-five at that time of night. . . .

"Q. How far across did you get? A. I had gotten on to the track enough to take three or four steps, at an angle like I was walking. If I had come straight across the track I would have been over the track in two steps; but as it was, I was walking at an angle, and I had probably taken three or four steps, and I heard the ground and charcoal shaking and jarring like; and I looked around like that (indicating), and the train was on me. . . .

"'Q. Well, how far could you see down the track to the east or west at the point where you were struck by the train? A. I would say about fifty feet."

The train crew and an apparently disinterested witness testified that the engine headlight was burning and the engine bell was ringing. The engineer and fireman testified they were on the lookout and saw no one ahead of the train.

The train consisted of fifty-five freight cars besides the engine and caboose. It was about three o'clock a.m. If the plaintiff was walking on a path along the north side of the track and was struck just after crossing the north rail and taking three or four steps in diagonally crossing the track to a path on the south side of the track, the train, going fifteen to twenty miles an hour must have been within fifty feet of the plaintiff when he stepped on the track over the north rail and as plaintiff testified he could see fifty feet

down the track, he could reasonably have known of the approach of the train even if it had no headlight burning; and plaintiff should have taken special care before crossing the track under the circumstances, since he had heard the noise of a train, even though he may have thought the train was on the track of another railroad company a half block away. If the engineer should have seen plaintiff as he started across the track, the train of fifty-five freight cars moving at fifteen or twenty miles an hour, could not have been stopped or its speed much reduced before it reached the place where plaintiff was attempting to cross the track as testified to by the plaintiff. See Powell v. Gary, 146 Fla. 334, 200 So. 854; S.A.L. Ry. v. Smith, 53 Fla. 375, 43 So. 235; S.A.L. Ry. v. Myrick, 91 Fla. 918, 109 So. 193; S.A.L. Ry. v. Barwick, 51 Fla 304, 41 So. 70; So. Ry. v. Mann, 91 Fla. 948, 108 So. 889.

A new trial should have been granted.

Judgment reversed and the cause remanded.

BROWN, C. J., TERRELL, BUFORD and THOMAS, JJ., concur.

CHAPMAN and ADAMS, JJ., dissent.

CHAPMAN, J., dissenting:

It is my view that the issues presented were for a jury under appropriate instructions. I think a judgment for some amount should be appropriate, $8,500 is excessive.