68 So.2d 390 (1953)
LOFTIN et al.
v.
KUBICA.
Supreme Court of Florida. Special Division A.
November 20, 1953.
Rehearing Denied December 18, 1953.
Robert H. Anderson, Don G. Nicholson, Miami, and Russell L. Frink, Jacksonville, for appellants.
Britton & Hodges, Miami, for appellee.
MATHEWS, Justice.
This is an appeal from a final judgment in a railroad crossing accident.
The accident happened at Southwest 27th Avenue in Miami, which crosses two tracks of the appellants approximately at right angles. This street has a pavement at the crossing approximately 50 feet in width. Sixty feet south of the track 27th Avenue crosses U.S. Highway No. 1 (sometimes called the Dixie Highway) at right angles. The Dixie Highway runs parallel with the tracks. There were two of the usual cross-arm signs situated south of the tracks, one on the east and one on the west side of the *391 avenue. A traffic light, installed, maintained and operated by the city, was suspended from the center of the intersection of Dixie Highway and 27th Avenue about 75 feet south of the railroad tracks. The railroad had nothing to do with this traffic light. As the appellee approached Dixie Highway, the traffic light was green. The appellee knew the railroad crossing was there and was familiar with it. As the traffic light was green, the appellee drove his automobile across Dixie Highway and proceeded toward the track of appellants on the paved street, which was approximately 50 feet wide. The accident happened at about 9 o'clock in the morning and it was a bright sunshiny day. The train was approaching the crossing at approximately 20 miles per hour. The appellee, after having passed the green light, proceeded to the crossing in his automobile at approximately 20 miles per hour. He did not slow down the speed of his automobile as he approached the crossing. The positive testimony of the train crew and bystanders was that the whistle was sounded on the train and the bell was ringing as required for this crossing. The whistle was blown four times and the bell rang continuously from 300 feet distance from the crossing.
There was some question raised about the limbs of a tree which was on a vacant lot and not on the railroad right of way. Pictures were taken of the scene sometime after the accident. The appellee testified that the scene was not exactly the same because the limbs on the tree were lower at the time of the accident. These pictures demonstrate conclusively that the tree did not obstruct the view whether the limbs were lower to the ground or not. The distances testified to by the appellee in connection with the pictures leave no room for doubt that the appellee could have seen the train had he looked.
The appellee and his passenger testified that they did not hear the bell ring or the whistle blow until just before the accident when they heard the whistle blow twice, "toot, toot," and they estimated the speed of the train to be between 20 and 30 miles per hour.
Mr. Podmajersky, passenger-witness testified as follows:
"Q. And you were six feet from the track. How far back from the place where the accident happened was the train when you first saw it? A. It was about 35 feet to 40 feet.
"Q. How far do you figure the automobile traveled before the accident? A. It was about 6 foot from the train, and when we reach track, toot, toot, and train was about 15, 20 feet, something like that. I got no much time.
"Q. And you say when you were 6 feet back from the track, the train was 35 or 40 feet? A. Yes.
"Q. And when the nose of your car reached the track the train was 15 or 20 feet back?
"The Court: I don't think he said that.
"Q. When you said the car was on the track, did you mean you were straddling the track, or the nose of your car was just coming on? A. Nose.
"Q. The train was 20 or 25 feet away? A. Yes.
"Q. How much further, then, did travel before the collision? A. We just go across that track. When we was on last track, rear wheel, we get hit."
The appellee testified as follows:
"Q. Had your car got up on the track before you saw the train? A. Well, I didn't notice. It was so close when I look both ways and car go slow, and I look both ways, I didn't notice anything coming, and I just keep on going. I had green light.
"Q. You don't actually know whether you had got up astraddle the tracks when you first saw the train, is that right? A. I didn't notice nothing. I just keep on going.

*392 "Q. As a matter of fact, you never saw that train, did you? A. No. I did see train, but it was too close to stop it.
"Q. You did see it? A. Yes, but it was too close to stop it.
The appellee cites the case of Powell v. Gary, 146 Fla. 334, 200 So. 854, as authority for the contention that the effect of the negative testimony of the appellee was positive. In that case the Court cited the case of Seaboard Air Line R. Co. v. Myrick, 91 Fla. 918, 109 So. 193, 195, and quoted therefrom as follows:
"* * * When negative testimony is relied upon to contradict positive evidence, it should appear that the negative statements were made by persons whose attention was directed to the fact that they were looking, watching, and listening for the fact. Not only that the opportunity for observing the fact existed, but that their attention was directed to the fact. * * *"
In order for this rule to apply it must be made to appear that the negative statements were made by persons whose attention was directed to the fact that they were looking, watching and listening for the fact. They must not only have an opportunity but their attention must be directed to the fact.
It is urged by the appellee that his passenger had been the driver of a milk truck for 20 years crossing railroad tracks twice daily and for that reason the passenger was particularly looking for a train and listening for a bell which he had through past experience learned to rely upon and expect. The argument is made that he was naturally on this occasion loking and listening for the ringing of a bell or the blowing of a whistle. However, the passenger as well as the appellee testified that he did not hear the bell ring or the whistle blow until the train was nearly upon them.
The appellee testified that he knew the crossing was there, and with that knowledge a positive duty rested upon him to take some care for his own safety. He should have slowed down or come to a stop. He should have looked before attempting to cross the tracks. He did neither. If he failed to slow down or reduce his speed or did not look up and down the tracks with full knowledge that the crossing was there, it is difficult to understand how his negative testimony that he did not hear the whistle or bell can have the effect of positive testimony.
There is some testimony to the effect that the appellee did not see the regulation cross-arm as he approached the track. A cross-arm is placed at a crossing for the purpose of giving warning that there is a crossing. If the appellee knew the crossing was there and was aware of the fact that he was approaching the crossing, then it becomes immaterial whether he saw the cross-arm or not.
The record in this case has been carefully examined. It does not appear that the railroad company was guilty of any act of negligence which proximately contributed to the accident and on the other hand, it appears that the negligence of the appellee was the sole proximate cause of the accident.
From the conclusion which we have reached it is unnecessary to discuss or decide the various other assignments of error.
The motion for directed verdict in favor of the appellant at the close of all of the testimony should have been granted.
Reversed, with directions to proceed further in accordance with this opinion.
TERRELL, Acting Chief Justice, SEBRING, J., and PARKS, Associate Justice, concur.