ROBERTS, Justice.
The plaintiff sued the railroad company for the wrongful death of her son, aged 20, the jury returned a verdict in her favor in the amount of $5,000, and this appeal followed. The railroad company filed a motion for directed verdict at the close of plaintiff’s case, at the close of all the evidence, and again after verdict to have the verdict set aside and judgment entered for defendant in accordance with its motion for directed verdict made at the close of all the evidence. It is the trial court’s denial of its motion for directed verdict which is here assigned as error by the railroad company.
The circumstances resulting in the unfortunate death of plaintiff’s son are not in dispute. The accident occurred about 4:30 a. m. in July, just between dark and sun-up. The decedent was lying with his legs across the north rail of the railroad tracks within the corporate limits of Sneads, Florida, at a point 400 yards east of the depot crossing at Sneads and 125 yards west of the River ' Street crossing. The company’s passenger train, the Gulf *693 Wind (consisting of a Diesel engine and seven cars) on its run from New Orleans to Jacksonville, passe'd over him, amputating his legs, and he died a few'hours later. There were also other injuries which may-have been caused by the impact of the train. The record does not show the reason for the decedent’s presence on the tracks. The fireman, who was sitting on the left-hand or north side of the train, first saw the decedent when the 'train was about 100 feet from him, and called out to the engineer. The engineer saw him when the train was about 90 feet away, and immediately applied his service brakes. He testified that he did not apply his emergency brakes because “I was at such a distance from the body that I didn’t have sufficient time to bring this train to a complete stop to avoid striking the body if I had gone to Emergency.” The engineer was just pick-, ing up speed after the depot crossing at Sneads and estimated the speed of the train at from 25 to 30 miles per hour, at the time he first saw the decedent. The fireman made a ‘‘rough guess” that the train was travelling 30 or 40 miles per hour. There was no evidence that there was a footpath across the track at the point where decedent was lying or that the public made a practice of crossing the track at any point between the depot crossing and the River Street crossing.
The gist of plaintiff’s charge ■ of negligence against the defendant was that (1) the train was operating at an excessive speed within the corporate limits of the town, and (2) the-defendant’s engineer did not exercise ordinary and reasonable care and diligence in applying the service brakes, rather than the emergency brakes, after he discovered the body. But there was no proof that a speed of from 25 to 40 miles per hour was excessive under the circumstances here present, and thus in violation of a duty owed to the public in general. In fact, the plaintiff appears to have tried the case in the court below on the theory that the train could have been stopped by the application of the emergency brakes, and that the engineer was wantonly negligent in failing so to do. She relies solely on the testimony of her expert witness, one Brown, who gave as his opinion that a train of the type here involved, running at a speed of 30 miles per hour,- could have been brought to a stop in 70 feet with the application of emergency brakes. This is in direct conflict with the testimony of the defendant’s engineer and its own expert witness. The engineer, who was called as plaintiff’s witness, testified' that' he knew he could not bring it to a stop in 90 feet, even with the emergency brakes; and the defendant’s expert witness testified, on the basis of tests made -with service brakes on an identical train, that at 25 miles per- hour the train could have been stopped in 465 to 475 feet in 18 to 19 seconds; and he estimated that the application -of emergency brakes would have brought the train to -a stop in 270 to 280 feet in 13 to 15 seconds. No tests were actually made with emergency brakes because of the shaking up of the passengers which would result therefrom; but even the plaintiff’s own expert witness testified that emergency brakes were only 30 percent faster than service brakes.
The defendant points out on this appeal that a train running at the rate of 30 miles per hour will travel 43.80 feet per second and 70 feet in 1.59'seconds, and that it is inherently improbable that a Diesel engine and seven cars, weighing 1,369,300 pounds, can be stopped in two seconds. It is also pointed out that even if it takes only one second for the engineer to put the emergency into operation (the plaintiff’s expert witness testified that it would take him “the tick of a watch” to start pulling the brake lever and another “tick of a watch” for the brake to become effective) it would still have been too late to save the decedent, even assuming that the train could have been brought to a stop in 70 feet after the emergency brake was effectively operating. It is contended, therefore, that the plaintiff has failed to carry the burden of showing that the railroad company was guilty of a breach of duty toward the decedent for which ' it must respond in damages to the plaintiff. We think that this contention must be sustained.
*694 The railroad company is required to show that it “exercised all ordinary and reasonable care and diligence” to avoid an injury caused by the running of its train. Section 768.05, Fla.Stat., F.S.A. But, as stated in Butler v. Southern Ry. Co., 63 Fla. 95, 58 So. 225, 229, “What was ordinary and reasonable care and diligence depends upon all the circumstances of the case. If the decedent was in fact a trespasser, it may be shown in evidence as a factor to be considered in determining the degree of care required of the defendant.”
Here, the decedent was, in fact, in the position of a trespasser, regardless of the circumstances which resulted in his being on the defendant’s track (and which, as noted, are not shown by the record). While we are cognizant of the pain and suffering of the decedent’s mother because of the untimely death of her son, we cannot let our sympathy blind us to the fact that the railroad company owed no duty to the decedent, as a trespasser or even as a mere licensee, “ ‘ “except not to harm him wil-fully or wantonly, or to set traps for him, or to expose him to danger recklessly or wantonly.” ’ ” Bruno v. Seigel, Fla.1954, 73 So.2d 674, 675, citing Stewart v. Texas Co., Fla., 67 So.2d 653, 654. It must be remembered that the engineer owed a duty to his passengers, which is of a higher degree than that owed to a trespasser, Butler v. Southern Ry. Co., 63 Fla. 95, 58 So. 225, and that a railroad company must respond in damages if a train “is so operated as to unduly or unreasonably cause sudden violent movements and stops” which result in injuries to a passenger. Atlantic Coast Line R. Co. v. Hamlett, 81 Fla. 872, 89 So. 337, 339. Whether a sudden stop which successfully avoided injuring a trespasser, but resulted in injury to a passenger, would be considered “unreasonable” under the rule stated above, need not be here decided; the rule is stated only to point up the several facets of the sudden emergency with which the defendant’s employee was confronted when he observed the plaintiff’s decedent lying on the track. He acted in this sudden emergency in a manner consistent with the safety of his passengers because, in his judgment, an emergency stop would not have saved the trespasser. His judgment in this .respect was confirmed by the defendant’s expert witness. Opposed to this is the testimony of plaintiff’s witness that the train could have been stopped in 70 feet by the application of emergency brakes — which, even if true, is inconclusive on the question of whether this would actually have avoided the injury, in view of the few moments of time which would have been consumed in putting the emergency brake into operation, as shown by this same witness.
This court’s reluctance to reverse a jury on a'disputed issue of fact has been many times stated. But the jury’s verdict “must have a rational predicate in the evidence and cannot rest on a mere probability or guess, arbitrary action, whims or caprice.” Golden v. Morris, Fla. 1951, 55 So.2d 714, 715. We can find in the evidence here no “rational predicate” for a verdict in plaintiff’s favor. The plaintiff’s own evidence showed that the defendant’s employee used such ordinary precautions as the exigencies of the case required so that the statutory presumption of negligence disappeared, and it thereupon became the plaintiff’s duty to make it appear from the evidence “that the defendant company was guilty of negligence in failing to observe some duty which it owed to the public in general, or to the injured person in particular, and that such failure was the proximate cause of the injury.” Seaboard Airline R. Co. v. Myrick, 91 Fla. 918, 109 So. 193, 195; Powell v. Gary, 146 Fla. 334, 200 So. 854. The only duty which the defendant owed to the plaintiff’s decedent was not to harm him wilfully or wantonly or to expose him to danger recklessly or wantonly. The plaintiff’s proof falls far short of showing that, in the circumstances here, the defendant’s engineer acted recklessly or wantonly, and the trial court should have directed a verdict for defendant at the close of all the evidence.
For the reasons stated, the judgment appealed from is reversed and the cause remanded with directions to enter a judgment for the defendant.
*695 MATHEWS, C. J., and THOMAS and DREW, JJ., concur.
TERRELL, J., and SANDLER, Associate Justice, dissent.
HOBSON, J., not participating.