138 So.2d 521 (1962)
Raymond ELY, Appellant,
v.
ATLANTIC COAST LINE RAILROAD CO., a Corporation of Virginia, and W.A. Burnham, Appellees.
No. 2342.
District Court of Appeal of Florida. Second District.
February 21, 1962.
Rehearing Denied March 13, 1962.
Jerome Pratt, Palmetto, Warren M. Goodrich of Goodrich & Hampton, Bradenton, for appellant.
Richard W. Reeves of Allen, Dell, Frank & Trinkle, Tampa, for appellees.
PER CURIAM.
Appellant Raymond Ely was plaintiff in an action for damages growing out of a collision between his automobile and a train of the Atlantic Coast Line Railroad Company. He obtained a $9865.00 jury verdict against the corporate defendant and the co-defendant engineer W.A. Burnham. The trial court, by reserved ruling on defendants' motion for a directed verdict, set aside the verdict and entered judgment for the defendants. The plaintiff appealed.
On March 3, 1960, at 7:45 P.M. the plaintiff was driving east on Seventh Street, one of the principal arteries of traffic in the City of Palmetto, when his automobile collided with a train belonging to the defendant railroad and operated by locomotive engineer W.A. Burnham. It was a dark and chilly night. Both the plaintiff and the defendant engineer were familiar with the crossing which was marked with standard crossing signs but had no automatic signal device. The speed of plaintiff's automobile was about 30 miles per hour and the train was traveling between 15 and 20 miles per hour. The plaintiff and several of plaintiff's witnesses testified that they did not see or hear any warning signals prior to the collision. Witnesses on behalf of the defendants testified that regular warnings were given by bell, whistle and lights.
Judgment non obstante veredicto, as a common law remedy, was available only to a plaintiff. Tolliver v. Loftin, 1945, 155 Fla. *522 698, 21 So.2d 359. A defendant's remedy was by motion in arrest of judgment. Presently, however, under Rule 2.7(b), Florida Rules of Civil Procedure, 31 F.S.A.[1] a judgment notwithstanding the verdict may be available to a defendant as well as to a plaintiff.
In entering judgment notwithstanding the verdict the trial court considered the evidence insufficient, as a matter of law, to establish liability on the part of the defendants. This being a comparative negligence case[2] the judgment necessarily included a judicial finding that the defendants were without contributing fault and that the sole proximate cause of plaintiff's injuries was his own negligence.
A canning plant was located along the railroad right of way about 45 feet from the street on the side from which the train was approaching and on the side from which the plaintiff was approaching. There also was testimony that a dump truck and a transport truck were parked along the siding between the canning plant and the intersection. Testimony was conflicting as to whether there were also some box cars on the spur or siding near the crossing. Whether these circumstances existed and caused material visual obstruction to the plaintiff were questions before the jury for determination.
A further and more contentious conflict, factually and legally, was whether or not adequate warning signals were given by the defendants. The engineer and fireman testified that the bell and whistle were sounded for four successive crossings including the particular crossing here involved. Several others, who were not eye witnesses, testified for the defendants that they heard warnings. It is notable here that such statements by witnesses who were not firsthand observers could have been interpreted as applying to crossings generally without pinpointing any particular crossing. The plaintiff and three additional witnesses testified that they did not hear any warnings. The defendants' motion questioned whether the jury could properly give any weight to such "negative" testimony and, ultimately, whether in combination with other evidence such testimony was legally sufficient to support the verdict rendered. The trial court, in charging the jury, defined and distinguished positive and negative testimony consistent with the following commentary.
In Tyus v. Apalachicola Northern Railroad Company, Fla. 1961, 130 So.2d 580, the Supreme Court said:
"Our examination of the opinion in the Powell case[3] convinces us we did not unequivocally state nor did we even by inference suggest, that `negative testimony will not make an issue in the face of positive testimony that the signals were given.' Indeed, we cannot find any case in which we have indubitably, or at all, pronounced such a rule. On the contrary, our conclusion with reference to the relative weight which should be given to negative and positive testimony, was [146 Fla. 334, 200 So. 855]:
"`As stated in Seaboard Air Line R. Co. v. Myrick, 91 Fla. 918, 109 So. 193, 195:
"`"It is not alone sufficient for the injured plaintiff to say that he `did not see' the approaching train, nor hear any whistle or bell or noise of its approach, in order to overcome positive evidence that all ordinary warnings were given of the train's approach. When negative testimony is relied upon to contradict positive evidence, it should appear that the negative statements *523 were made by persons whose attention was directed to the fact that they were looking, watching and listening for the fact. Not only that the opportunity for observing the fact existed, but that their attention was directed to the fact * * *."' (Emphasis theirs)
"The above statement accords not only with reason and logic, but also with the great weight of authority. As stated in American Law Reports, annotated:
"`As already indicated, the probative force of testimony that crossing signals were not given, or that they were not seen or heard, on the approach of a train, depends largely upon whether such testimony is regarded as negative or positive in effect, and upon the attendant circumstances  whether or not the witness was in such a position that it would be presumed that he would have observed the signals if given, whether or not he was listening, watching, or otherwise attentive to the situation, the condition of his sense of sight or hearing, attendant noises, the blowing of wind, etc. A distinction is made, too, in some jurisdictions, between testimony positively declaring that signals were not given, and testimony stating merely that the witness did not hear or see them. (Emphasis theirs)
"`If all testimony to the effect that signals were not given on the approach of a train to a crossing should be regarded as wholly without probative force purely on the ground that it was negative testimony in that it was testimony to the effect that an event did not occur, the plaintiff in a crossing accident case would be without means of proof that the signals were not given, and so could never rely upon the failure of the signals as proof of negligence on the part of the defendant, which in many cases is absolutely necessary in order to prove any negligence whatsoever on the part of the defendant.' (Italics theirs) * * *"
At page 585:
"The gist of our rule in relation to negative testimony in the face of positive testimony to the contrary is that if a jury decides that the attention of the witness whose testimony is negative in character, is actually directed to the fact or situation, about which he later testifies, regardless of the reason therefor, said jury may consider such negative testimony and accord to it the weight it may deem proper." (Italics theirs)
And at page 586:
"* * * It was for the jury to weigh and evaluate such testimony, even if it should be considered negative `in effect,' and determine `whether or not the witness was in such a position that it would be presumed that he would have observed the signal if given, whether or not he was listening, watching, or otherwise attentive to the situation, * * *'." (Emphasis theirs)
Virginia Enfield, a disinterested witness, testified that she was driving behind the plaintiff's automobile and was 75 to 100 feet from the crossing at the time of the collision. Her testimony in part was as follows:
On direct:
"Q Just prior to the accident, did you hear any train whistles or bells or see the headlight on the train?
"A No, I did not. It startled me and upset me because I kept thinking afterwards  and I remember for a number of days  that I kept thinking to myself, "It could have been me," because I didn't hear a train whistle and there was nothing  I mean, a light or anything that would give me a warning myself  to think it could have been me.
"Q I will ask you, did you notice the physical layout on that particular crossing?

*524 "A What do you mean?
"Q Any boxcars on the siding or anything of that sort  any obstruction of view that you can recall?
"A No, not boxcars but I do know the obstruction of view the way I was coming. The packing house building does obstruct the view.
"Q Did you happen to notice after the train stopped whether or not the light was shining directly ahead or whether it was revolving?
"A The only thing I did notice was that the light was shining. Of course, I was very upset for the time being, not knowing how badly the gentleman was hurt and all; so that was I really didn't notice.
"Q But you didn't hear a train whistle?
"A No, I definitely didn't hear a train whistle. It made me think afterwards now every time I go that way it is on my mind. Just as I turn to go to that I watch all the time. * * *"
And on cross:
"* * * Q When you saw that an accident had happened, were you in position then, with relation to the crossing, when you would have been looking or listening for the train?
"A No, it came up on me too.
"Q You don't understand my question. When do you start looking and listening for a train?
"A I knew the crossing was down there so I had it on my mind, I really did.

"Q What I am getting at, were you in any position of danger at that time yourself so that you would be observing or listening and looking for a train?
"A Yes, I was." (Emphasis ours)
The comparative negligence doctrine does not, of course, require the submission of every such case to the jury nor does it mean that all verdicts should remain inviolate. The court is not thus debarred from the rule of reason. There arises nevertheless a delicate judicial problem when the court is urged to hold, as a matter of law, that one side of the evidence is essentially devoid of probative force and effect. Inasmuch as the plaintiff's entitlement to jury consideration in these cases is not dependent upon more than a fair inference of negligence on the part of the defendant, a contrary holding would transgress the rightful domain of the jury.
In Budgen v. Brady, Fla.App. 1958, 103 So.2d 672, 674, the court said:
"* * * Furthermore, a party who moves for a directed verdict admits not only the facts proved by the evidence adduced, but also admits every conclusion favorable to the adverse party that the jury might fairly and reasonably infer from the evidence. And, when there is room for a difference of opinion between reasonable men as to the existence of evidentiary facts from which an ultimate fact is sought to be established, or when there is room for such difference as to the inferences which might reasonably be drawn from conceded facts, the court should submit the case to the jury for its finding. It is the jury's conclusion that should prevail in such case, and not the views of the judge."
Moreover the court should act with extreme caution on motions to set aside verdicts. See Cutchins v. Seaboard Airline Railroad Company, Fla. 1958, 101 So.2d 857; Hilkmeyer v. Latin American Air Cargo Expediters, Inc., Fla. 1957, 94 So.2d 821, 824; Katz v. Bear, Fla. 1951, 52 So.2d 903, 904.
In Cutchins v. Seaboard Air Line Railroad Company, supra, the fact situation was not unlike the present case in significant respects. In that case the Supreme Court *525 of Florida restated the law with reference to reserved rulings on motions for directed verdict as discussed in Hilkmeyer v. Latin American Air Cargo Expediters, Inc., supra, and then said at page 861 of 101 So.2d:
"We pointed out there [Hilkmeyer case, supra] that a verdict should never be directed unless the evidence was such that under no view which the jury might lawfully take of it favorable to the adverse party could a verdict for the adverse party be sustained. Moreover we pointed out that one moving for a directed verdict against his opponent admitted not only the facts shown by the evidence but every reasonable inference favorable to his opponent that the jury might fairly and reasonably arrive at from the evidence. We also said that it is for the jury to determine all questions of conflicting evidence and that such conflicts should be submitted under appropriate instructions."
The court there held the evidence sufficient to present a jury issue and that the trial court, after rendition of verdict, erred in granting the defendant railroad's renewed motion for directed verdict.
This case has been well presented and we are mindful that able counsel on each side have cited Florida decisions not here touched upon but which apparently tend to support their respective positions. This is not uncommon in areas of litigation, such as this, where often the line of liability vel non is finely drawn. Each case must be viewed in the perspective of its own circumstances as well as in the light of other cases.
It is our opinion that the trial court correctly submitted the case to the jury and gave appropriate charges. The verdict indicates a finding of concurring negligence and apportionment of damages, and we think it could not be said, with requisite judicial assurance, that the evidence in its totality was not sufficient to support the verdict. We therefore hold that it was error to set aside the verdict and enter judgment for the defendants. The judgment accordingly is reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon.
Reversed with directions.
SHANNON, C.J., and SMITH and WHITE, JJ., concur.
NOTES
[1] "Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *."
[2] Florida Statutes 1959, § 768.06, F.S.A.
[3] Powell v. Gary, 146 Fla. 334, 336, 200 So. 854.