348 So.2d 6 (1977)
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,
v.
Donald McCRAY, Appellee.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,
v.
Simon STOCKTON, Etc., et al., Appellees.
Nos. 76-197, 76-207.
District Court of Appeal of Florida, Third District.
March 8, 1977.
Rehearing Denied August 3, 1977.
Corlett, Merritt, Killian & Sikes, Greene & Cooper, Miami, for appellant.
Rosen & Bronis, Edward C. Vining, Jr., and Richard A. Burt, Walton, Lantaff, Schroeder & Carson and George W. Chesrow, Ratiner & Glinn, Miami, for appellees.
*7 Before HAVERFIELD and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
Defendant insurer appeals two summary judgments determining that Donald McCray was insured by defendant for the subject accident.
In February 1973 Jose Martinez purchased and was the legal title holder of a 1973 Camaro financed through GMAC. Donald McCray owned and held title to a 1966 Corvette and a 1963 Corvette. In June 1974 McCray traded his 63 Corvette for Martinez' Camaro. GMAC would not permit Martinez to transfer the certificate of title for the Camaro to McCray because of an outstanding lien on the 63 Corvette. Martinez executed a notarized document authorizing McCray to operate the Camaro and McCray did likewise with respect to the 63 Corvette. At the time he acquired the Camaro, McCray had an existing insurance policy issued by the appellant United Services Automobile Association (USAA) covering his 66 Corvette. The Camaro was never added and when the policy was renewed in late October 1974 the 66 Corvette was the only vehicle insured. McCray in his deposition testified that he had, in early October 1974, given the Camaro as a gift to his girlfriend, Carol Kiibler. On December 1, 1974 McCray took his 66 Corvette to the shop to be painted and used the Camaro some of the time. On December 26, 1974 while his Corvette was still in the shop, McCray was driving the Camaro in which Pamela Stockton and Carol Kiibler were passengers when he lost control of it resulting in a single car collision. Pamela and Carol were killed and McCray was seriously injured. The personal representatives of Pamela and Carol filed wrongful death actions against Martinez,[1] McCray and USAA. USAA answered and filed a cross-claim for a declaratory action on insurance coverage contending that the Camaro was not an insured vehicle under its policy. McCray then filed a declaratory judgment action seeking an adjudication of coverage. All three cases were consolidated and following pretrial discovery, summary judgments were entered finding that USAA provided coverage to McCray with respect to the subject accident.
USAA appeals and contends there are genuine issues of material facts as to whether McCray owned the Camaro at the time of the accident, whether he was temporarily using the car and whether it was furnished for his regular use. We cannot agree.
USAA's policy provided coverage to McCray for all sums which he might become legally obligated to pay as damages because of bodily injury including death resulting therefrom arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. Under this liability section the policy defines an owned and non-owned automobile as follows:
* * * * * *
"An `owned automobile'...
"(a) [A] private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
* * * * * *
"(c) a private passenger ... automobile ownership of which is acquired by the named insured during the policy period ... or
"(d) a temporary substitute automobile.
"A `temporary substitute automobile' ...
"[A]ny automobile, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile when withdrawn from normal use because of its servicing ...
"A `non-owned automobile' ...

*8 "[A]n automobile not owned by or furnished for the regular use of ... the named insured . . other than a temporary substitute automobile."
* * * * * *
However, in this section the words "own" or "owner" are not defined which creates an ambiguity, and the policy should be construed according to the entirety of its terms as set forth therein and as amplified by any endorsement thereto. See Feldman v. Central National Insurance Co. of Omaha, 279 So.2d 897 (Fla.3d DCA 1973) and Section 627.419(1), Florida Statutes (1975). Further, an insurance policy must be interpreted to provide coverage whenever possible. Sanz v. Reserve Insurance Company of Chicago, Illinois, 172 So.2d 912 (Fla.3d DCA 1965); 18 Fla.Jur. Insurance § 407 (1971) and cases cited therein. The personal injury protection endorsement in this policy defines owner as "a person or organization who holds the legal title to a motor vehicle ..." It is undisputed that Martinez held the legal title to the Camaro and after the accident received the proceeds of a collision insurance policy covering the car and thereafter transferred the title to the collision insurer. Contrary to USAA's contention, McCray was not the owner of the car. Cf. Metzel v. Robinson, 102 So.2d 385 (Fla. 1958) and Glens Falls Insurance Company v. Gray, 386 F.2d 520 (5th Cir.1967). In addition, there is no question that McCray's Corvette was in the shop for servicing[2] (i.e. painting) at the time of the accident and, thus, the Camaro was a temporary substitute automobile for which McCray was covered under his policy with USAA. Furthermore, in his deposition McCray testified that he gave any interest he had in the Camaro in early October 1974 to Carol Kiibler and she had the only set of keys to the car. The deposition testimony of Carol's girlfriend, Marilyn Solomon, corroborates the above. To refute this fact, USAA relies upon the testimony of Mary Lee Miles, Carol's roommate, who stated that Carol never told her the Camaro was given to her as a gift. However, Ms. Miles further testified that she rarely socialized with Carol and the gift of the Camaro was not the type of thing Carol would have related to her; therefore, she did not know whether or not the Camaro was, in fact, given to Carol. We find Mary Lee's testimony is insufficient to contradict McCray's testimony. See Seaboard Air Line Ry. Co. v. Myrick, 91 Fla. 918, 109 So. 193 (1926).
The policy was ambiguous and the facts were not in dispute. Thus, the trial judge was eminently correct in resolving the ambiguity as a matter of law. See United Services Automobile Association v. Porras, 214 So.2d 749 (Fla.3d DCA 1968).
Affirmed.
NOTES
[1] who was voluntarily dismissed from this action
[2] See Sanz v. Reserve Insurance Company of Chicago, Illinois, 172 So.2d 912 (Fla.3d DCA 1965), supra.